[Cite as *State v. Davis*, 2018-Ohio-4368.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 1-17-44

    v.

RAYLON A. DAVIS,                     O P I N I O N

    DEFENDANT-APPELLANT.

---

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 1-17-45

    v.

RAYLON A. DAVIS,                     O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeals from Allen County Common Pleas Court
Trial Court Nos. CR2015 0361 and CR2014 0118**

**Judgments Affirmed**

**Date of Decision: October 29, 2018**

---

APPEARANCES:

    *Michael A. Partlow* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-Appellant, Raylon A. Davis ("Appellant") appeals his convictions from the Allen County Common Pleas Court for one count of possession of cocaine and one count of possession of heroin in case number CR 2014 0118; and one count of possession of cocaine, one count of possession of heroin, one count of possession of marijuana, one count of illegal cultivation of marijuana and one count of having weapons while under disability in case number CR 2015 0361. On appeal, Appellant asserts, in each case, that: 1) his convictions were not supported by sufficient evidence; 2) his convictions were against the manifest weight of the evidence; 3) he received ineffective assistance of counsel; 4) the trial court erred in denying his motion to dismiss; 5) the trial court erred by permitting appellee to present the testimony of an expert witness who had not provided the defense with a report; 6) the trial court erred by consolidating his two cases for trials; and 7), 8) the trial court erred by denying Appellant's motions to suppress evidence in each case. For the reasons that follow, we affirm the judgments of the trial court.

*Factual Background - Case Number CR 2014 0118*

{¶2} On March 14, 2014, (then) Lima Police Department Patrolman Trent Kunkleman ("Kunkleman") was on third shift patrol in the city of Lima, Ohio. (Doc. No. 146). Around 3:20 a.m., Kunkleman responded to a police dispatch to a

downtown parking lot in Lima in regards to a suspicious silver vehicle. (*Id.*). Upon arriving at the parking lot, Kunkleman located a grey Hyundai. (*Id.*). Kunkleman testified that the Hyundai was the only vehicle in the parking lot, so he shined his spotlight into the vehicle, identifying the Appellant as its sole occupant. (*Id.*).

{¶3} A second Lima police officer, Sergeant Hillard ("Hillard"), arrived at the parking lot shortly after Kunkleman. (*Id.*). Hillard testified that he received a police dispatch that a suspicious vehicle's car alarm was going off[1] in the Lima parking lot in question. (*Id.*).

{¶4} After Hillard arrived, Kunkleman walked up to the Appellant's vehicle in an attempt to engage Appellant in conversation, but Appellant did not respond. (*Id.*). Instead, Appellant exited his vehicle, turned his back to Kunkleman, and then leaned back into the vehicle. (*Id.*). Kunkleman testified that he was unable to see Appellant's hands, but was able to smell an overwhelming odor of raw marijuana. (*Id.*). At this point, Kunkleman became alarmed that Appellant might be reaching into his vehicle for a weapon, so he pulled Appellant away from the car. (*Id.*). Officers Kunkleman and Hillard testified that they saw the Appellant placing his hand down into his pants pocket at this point. (*Id.*). Two additional law enforcement officers, who had also arrived on the scene, then grabbed Appellant and patted him down for officer safety. (*Id.*). During the pat down, officers testified that there was

---

[1] Dash-cam video entered into evidence confirms that a car alarm was going off. (*Id.*; Mot. To Suppress Hearing, 06/30/2016, State's Ex. 2).

a strong odor of marijuana coming from Appellant. (*Id.*). Officers testified that they felt a "baggie" in Appellant's left pocket. (*Id.*). Officers removed the baggie, which contained drugs. (*Id.*). Appellant was then arrested. (*Id.*).

{¶5} After Appellant's arrest, Kunkleman returned to the vehicle to investigate the odor of marijuana coming from it. (*Id.*). Hillard, who was also at the vehicle at this time, searched the vehicle, and found a paper sack under the driver's seat that contained a large amount of cocaine. (*Id.*). In addition to the cocaine, officers located heroin, marijuana, ecstasy pills, a digital scale, and a ledger in the vehicle. (*Id.*).

*Procedural Background - Case Number CR 2014 0118*

{¶6} On May 15, 2014, the Allen County Grand Jury indicted Appellant on three (3) counts, including: Count One, possession of drugs (cocaine) in violation of R.C. 2925.11(A)&(C)(4)(e), a first degree felony; Count Two, possession of drugs (heroin) in violation of R.C. 2925.11(A)&(C)(6)(b), a fourth degree felony; and Count Three, aggravated possession of drugs (ecstasy) in violation of R.C. 2925.11(A)&(C)(1)(a), a fifth degree felony. (Doc. No. 3).

{¶7} Ultimately, Appellant was arraigned in the Allen County Common Pleas Court on January 23, 2015.[2] (Doc. No. 13). Appellant's recognizance bond

---

[2] The record reveals a significant gap in time between Appellant's indictment and his arraignment. However, the record also reveals that Appellant made his initial appearance in the Lima Municipal Court on March 21, 2014, wherein he posted a $500,000 cash surety bond and was released. (Doc. No. 2).

was set at $100,000 cash or surety, which Appellant posted. (Doc. No. 11). However, on October 1, 2015, the trial court ordered that Appellant's bond be forfeited because he failed to appear for a pre-trial conference. (Doc. No. 32). A bench warrant for Appellant's arrest was then issued by the trial court. (*Id.*).

{¶8} On September 17, 2015, Appellant was indicted on new charges in Allen County.[3]

{¶9} On February 19, 2016, Appellant was apprehended by the US Marshall's Service in Detroit, Michigan. (Doc. No. 34). After returning to Allen County, the trial court ordered that the Appellant be held in the Allen County Jail, without bond, until further order of the Court. (Doc. No. 38). Appellant's jury trial was then scheduled for April 19, 2016. (Doc. No. 69).

{¶10} On April 12, 2016, Appellant filed a motion to suppress in the trial court. (Doc. No. 87). On May 5, 2016, Appellant executed a waiver of his right to speedy trial. (Doc. No. 115).

{¶11} A hearing on the motion to suppress occurred on June 30, 2016. (Doc. No. 138). And, on July 21, 2016, the trial court issued its ruling overruling Appellant's motion to suppress. (Doc. No. 146).

{¶12} On July 7, 2016, the State filed a motion to consolidate Appellant's cases. (Doc. No. 137). Appellant filed his oppositions to the State's motion to

---

[3] This is Case Number CR 2015 0361, which we will address infra.

consolidate on July 15, 2016 and on August 22, 2016. (Doc. Nos. 139; 159). On August 26, 2016 the trial court consolidated the cases. (Doc. No. 163).

{¶13} On August 3, 2016, Appellant signed and filed a second waiver of his speedy trial rights in the trial court. (Doc. No. 155). Appellant's jury trial was rescheduled for December 20, 2016. (Doc. No. 169). On November 28, 2016, Appellant, through counsel, filed a motion to continue. (Doc. No. 171). Specifically, Appellant's trial counsel represented to the court that he had encountered difficulty contacting potential defense witnesses in preparation for trial. (*Id.*). A hearing was held on Appellant's motion for a continuance on November 30, 2016. (Doc. No. 174). At the hearing, Appellant refused to further waive his right to a speedy trial beyond the January 1, 2017 date set forth in Appellant's previous waiver. (*Id.* at 2). Despite Appellant's refusal, the trial court found that a sixty (60) day continuance was necessary and not unreasonable under the circumstances. (*Id.* at 8). Appellant's trial was set for February 21, 2017. (*Id.*).

{¶14} On February 3, 2017, the State filed its motion for a continuance, due to the Ohio Supreme Court's recent decision in *State v. Gonzales,* requiring that the State must prove the actual weight of a drug in question, (excluding any filler materials) to meet the statutory weight requirement. (Doc. No. 180). Stated better, based on the change in the prosecution of drug offenses under *State v. Gonzales*, the State requested additional time to determine the actual weight of the cocaine

possessed by Appellant. Appellant objected to the State's motion for continuance. (Doc. No. 181). The trial court, finding that the Ohio Supreme Court's decision in *Gonzales* was a significant departure from previous precedent and custom in drug prosecutions, granted the State's motion. (Doc. No. 182). Ultimately, Appellant's trial was rescheduled for May 16, 2017. (Doc. No. 184).

{¶15} On April 12, 2017, Appellant filed a motion to dismiss in the trial court. (Doc. No. 202). Specifically, Appellant requested that his cases be dismissed, pursuant to R.C. 2945.73(B) and R.C. 2945.71(C)(2), because he had been held in custody for 276 days, which exceeded the statutorily permissible 270 days. (*Id.*). The State responded to Appellant's motion, arguing that the time involving its continuance (of February 3, 2017) should not count against it, because that continuance was "reasonable and necessary" under the circumstances of the case. (Doc. No. 205). The trial court overruled Appellant's motion on April 19, 2017. (Doc. No. 206).

{¶16} On May 9, 2017, the Appellant fired his trial counsel and a new attorney was appointed to represent the Appellant. (Doc. No. 211). As a result, Appellant's trial was rescheduled for August 1, 2017. (Doc. No. 214).

{¶17} On July 28, 2017, Appellant filed a *pro se* "motion for *pro se* counsel" and a "motion for continuance of trial date." (Doc. Nos. 237; 238). Appellant alleged that his current counsel had failed to file pretrial motions and subpoena

witnesses in preparation for his upcoming trial. (*Id.*). The trial court overruled Appellant's motions on August 1, 2017, finding that Appellant had five (5) different attorneys during the pendency of his cases, and that extensive pretrial discovery had been conducted during the course of the cases. (Doc. No. 239).

{¶18} Appellant's jury trial commenced on August 1, 2017. (Doc. No. 243). Prior to the start of the trial, in case number CR 2014 0118, the State made an oral motion to amend Count One in the indictment, possession of cocaine, a felony of the first degree, to possession of cocaine, a felony of the second degree. (*Id.*). The trial court granted the State's motion. (*Id.*) Further, the State made an oral motion to dismiss Count Three in the indictment, aggravated possession of drugs, a felony of the fifth degree, which the trial court also granted. (*Id.*). The Appellant did not object to either motion.

{¶19} Appellant's trial ended August 3, 2017, with the jury finding the Appellant guilty of Count I, possession of cocaine, a felony of the second degree and of Count II, possession of heroin, a felony of the first degree. (*Id.*).

{¶20} Ultimately, and in case number CR 2014 0118, the trial court sentenced the Appellant to consecutive prison terms of six (6) years (Count I) and twelve (12) months (Count II) on September 14, 2017. (Doc. No. 244).

*Factual Background - Case Number 2015 CR 0361*

**{¶21}** On January 12 or 13, 2015, investigators with the West Central Ohio Criminal Task Force ("WCOCTF") commenced an investigation to locate the Appellant, due to Appellant's outstanding warrants. (Doc. No. 100). On January 12, 2015, the Lima Police Department received an anonymous telephone call[4] that Appellant was staying at 1222 Catalpa Street in Lima, Ohio. (*Id.*). The caller further advised officers that Appellant was not a tenant on the lease at that location. (*Id.*). Sgt. Charles Godfrey, ("Godfrey") then a supervisor at WCOCTF, attempted to contact the anonymous caller to verify the information provided, but was unable to do so. (*Id.*). So, based on the information provided (by the anonymous caller), Godfrey set up an undercover operation on January 13, 2015 to monitor the 1222 Catalpa Street residence in an attempt to locate Appellant. (*Id.*).

**{¶22}** On January 17, 2015, Godfrey observed a Chrysler 300 parked at the Catalpa Street residence. (*Id.*). Later that day, an individual in a hooded sweatshirt left the residence in that vehicle. (*Id.*). Since the vehicle's windows were heavily tinted, and because Godfrey could not see inside it, Godfrey arranged for the Ohio State Highway Patrol to stop the vehicle for a tinted windows violation. (*Id.*). When the Chrysler was stopped a person identified as "Watkins" was located as a passenger in the vehicle. (*Id.*). Watkins told law enforcement officials that he and

---

[4] The anonymous caller was later identified as the landlord of the duplex wherein Appellant was staying. (*See,* Mot. to Suppress Hrg., 10/20/2016 Tr. at 7).

the driver had been visiting "Ray" at 1222 Catalpa Street. (*Id.*). When shown a picture of Appellant, Watkins confirmed that "Ray" was the Appellant. (*Id.*).

{¶23} With that information (from Watkins), Godfrey returned to 1222 Catalpa Street, believing that Appellant was present in the residence. (*Id.*). And, after verifying that Appellant still had active outstanding warrants, Godfrey went to the residence's front door while law enforcement set up a perimeter around the house. (*Id.*). Godfrey knocked on the door, identified that he was a police officer, and that he had a warrant for Appellant's arrest. (*Id.*). Godfrey further advised that if the door wasn't opened it would be knocked down. (*Id.*).

{¶24} While Godfrey was at the front door attempting to kick it in, another investigator radioed Godfrey, advising him that the Appellant was seen leaving the residence through the back door, but then returned into the residence when law enforcement officials were seen. (*Id.*).

{¶25} Law enforcement eventually entered the house, located Appellant, and arrested him on the outstanding warrants. (*Id.*). During a protective sweep of the residence, officers observed a "marijuana grow tent" in plain view. (*Id.*). Officers observed several marijuana plants and a marijuana grow operation inside the tent (which was searched because it was large enough to conceal a person). (*Id.*). Based on the Appellant's arrest and the officer's observations during the protective sweep, law enforcement immediately obtained a search warrant for the residence. (*Id.*).

*Procedural Background - Case Number CR 2015 0361*

**{¶26}** On September 17, 2015, Appellant was indicted by the Allen County Grand Jury in case number CR 2015 0361 on five counts: Count One, possession of drugs (cocaine) in violation of R.C. 2925.11(A)&(C)(4)(d), a second degree felony; Count Two, possession of drugs (heroin) in violation of R.C. 2925.11(A)&(C)(6)(d), a second degree felony; Count Three, possession of drugs (marijuana) in violation of R.C. 2925.11(A)&(C)(3)(d), a third degree felony; Count Four, illegal cultivation of marijuana in violation of R.C. 2925.04(A)&(C)(5)(d), a third degree felony; and Count Five, having weapons while under disability, in violation of R.C. 2923.13(A)(3)&(B), a felony of the third degree. (Doc. No. 1). Furthermore, Counts One, Two, Three, and Four each contained the following specifications: 1) Specification for Forfeiture of a Gun in a Drug Case, pursuant to R.C. 2941.1417(A); 2) Specification for Forfeiture of Money in a Drug Case, pursuant to R.C. 2941.1417(A); 3) Specification for Forfeiture of Property, pursuant to R.C. 2941.1417(A); 4) Specification for Forfeiture of a Gun in a Drug Case, pursuant to R.C. 2941.1417(A); and 5) Specification for Forfeiture of a Gun in a Drug Case, pursuant to R.C. 2941.1417(A). (*Id.*).

**{¶27}** On February 25, 2016, Appellant was arraigned in the trial court and entered pleas of "not guilty to all counts and specifications" in the indictment. (Doc. No. 9). Appellant's jury trial was scheduled for May 10, 2016. (Doc. No. 14).

{¶28} On April 15, 2016, Appellant filed a motion to suppress/motion in limine in the trial court. (Doc. No. 25). Specifically, Appellant argued that law enforcement's warrantless search of the residence (where Appellant was located) was unconstitutional. (*Id.*). Further, Appellant filed a motion to continue his trial on May 5, 2016, so his pending motion to suppress could be heard. (Doc. No. 28). He also executed a waiver of his speedy trial rights pursuant to R.C. 2945.71 on the same date. (Doc. No. 30). The trial court granted his continuance and Appellant's jury trial was rescheduled for September 20, 2016. (*Id.*).

{¶29} On July 7, 2016, the State filed a motion to consolidate both of Appellant's criminal cases. (Doc. No. 39). Appellant opposed the State's request. (*See,* Doc. No. 48).

{¶30} On August 3, 2016, Appellant executed another waiver of his speedy trial rights pursuant to R.C. 2945.71. (Doc. No. 61). However, Appellant's waiver and continuance was for a date certain, January 1, 2017. (*Id.*).

{¶31} Appellant, through his then counsel, filed an additional motion to suppress in the trial court on August 22, 2016. (Doc. No. 76). Also on that date, Appellant filed a supplemental motion in opposition to the State's motion to consolidate his cases. (Doc. No. 77).

{¶32} On August 26, 2016, the trial court granted the State's motion to consolidate. (Doc. No. 82). Specifically, the trial court found that the charges were

of the same or similar character sufficient to permit joinder, and that Appellant failed to demonstrate sufficient information to show that joinder violated his right to a fair trial. (*Id.*).

{¶33} On September 27, 2016, Appellant's jury trial was rescheduled for December 20, 2016. (Doc. No. 93).

{¶34} On October 20, 2016, the trial court held a motion hearing on Appellant's motion to suppress. (Motion to Suppress Hearing, 10/20/2016 Tr.). The trial court found, based upon the evidence presented, that the search warrant of 1222 Catalpa Street was supported by sufficient probable cause and further found that statements that Appellant made to law enforcement officials did not require *Miranda* warnings because Appellant made unsolicited statements that were not the result of police interrogation. (Doc. No. 100).

{¶35} On November 28, 2016, Appellant filed another motion for continuance of his jury trial, averring that his counsel had encountered difficulty locating a potential witness. (Doc. No. 102). The trial court granted the motion and continued Appellant's jury trial until February 21, 2017. (Doc. No. 105).

{¶36} On February 3, 2017, the State filed its motion for a continuance, due to the Ohio Supreme Court's recent decision in *State v. Gonzales,* requiring that the State must prove the actual weight of a drug in question, (excluding any filler materials) to meet the statutory weight requirement. (Doc. No. 107). Stated better,

based on the change in the prosecution of drug offenses under *State v. Gonzales*, the State requested additional time to determine the actual weight of the cocaine possessed by Appellant. Appellant objected to the State's motion for continuance. (Doc. No. 108). The trial court, finding that the Ohio Supreme Court's decision in *Gonzales* was a significant departure from previous precedent and custom in drug prosecutions, granted the State's motion for a continuance. (Doc. No. 109). Ultimately, Appellant's trial was rescheduled for May 16, 2017. (Doc. No. 111).

**{¶37}** On April 12, 2017, Appellant filed a motion to dismiss in the trial court. (Doc. No. 139). Specifically, Appellant requested that his cases be dismissed, pursuant to R.C. 2945.73(B) and R.C. 2945.71(C)(2), because he had been held in custody for 276 days, which exceeded the statutorily permissible 270 days. (*Id.*). The State responded to Appellant's motion, arguing that the time involving its continuance (of February 3, 2017) should not count against it, because that continuance was "reasonable and necessary" under the circumstances of the case. (Doc. No. 140). The trial court overruled Appellant's motion on April 19, 2017. (Doc. No. 141).

**{¶38}** On May 9, 2017, the Appellant fired his trial counsel and a new attorney was appointed to represent the Appellant. (Doc. No. 147). As a result, Appellant's trial was rescheduled for August 1, 2017. (Doc. No. 150).

**{¶39}** On July 24, 2017, Appellant filed a *pro se* "motion for pro se counsel." (Doc. No. 173). On July 28, 2017, Appellant filed an additional "motion for *pro se* counsel" as well as a "motion for continuance of the trial date," "motion for specific discovery," and "motion to suppress evidence." (Doc. Nos. 180; 181; 182; 183). Appellant, through his various motions, alleged that his current counsel had failed to file pretrial motions and subpoena witnesses in preparation for his upcoming trial. (*Id.*). The Appellant further alleged that the State had failed to provide specific discovery. (Doc. No. 182). On August 1, 2017, the trial court overruled Appellant's motions, finding that the Appellant had five (5) different attorneys during the pendency of his cases, and that extensive pretrial discovery had been conducted during the course of the case. (Doc. No. 186).

**{¶40}** Appellant's jury trial commenced on August 1, 2017. (Doc. No. 194). Prior to the start of the trial, in case number CR 2015 0361, the State made an oral motion to amend Count Three in the indictment, possession of marijuana, a felony of the third degree, to possession of marijuana, a felony of the fifth degree, which the trial court granted. (*Id.*) The Appellant did not oppose the amendment. (*Id.*).

**{¶41}** Appellant's trial ended August 3, 2017, with the jury finding Appellant guilty of all charges. (*Id.*). Further, Appellant was found guilty of all specifications except for the specification for property (electronics) contained in Count One and Count Two. (*Id.*).

{¶42} Appellant was sentenced on September 14, 2017 in the trial court and was ordered to serve a prison term of: seven (7) years in prison under Count One; seven (7) years in prison under Count Two; twelve (12) months in prison under Count Three; thirty (30) months in prison under Count Four; and thirty-six (36) months in prison under Count Five. (Doc. No. 200). The trial court further ordered that all counts be served consecutively to each other and consecutively to the prison sentence imposed in case number CR 2014 0118. (*Id.*). With regards to the specifications, the firearms were ordered to be forfeited to the WCOCTF; the money was ordered to be forfeited to the WCOCTF; and the electronics (subject to the specification in Counts Three and Four) were ordered forfeited to the WCOCTF. (*Id.*). Appellant's prison sentences totaled twenty-eight (28) and a half years. (*Id.*).

{¶43} From the judgments in case number CR 2014 0118 and case number CR 2015 0361 Appellant timely appeals, and presents the following assignments of error for our review:

**ASSIGNMENT OF ERROR NO. I**

**APPELLANTS [SIC] CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE.**

**ASSIGNMENT OF ERROR NO. II**

**APPELLANTS [SIC] CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

## ASSIGNMENT OF ERROR NO. III

**APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS IN THAT REGARD.**

## ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED IN DENYING THE APPELLANTS [SIC] MOTION TO DISMISS THE CASE BASED UPON VIOLATION OF HIS RIGHT TO A SPEEDY TRIAL.**

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY PERMITTING THE APPELLEE TO PRESENT EXPERT TESTIMONY BY AN EXPERT WITNESS THAT HAD NOT PROVIDED A REPORT.**

## ASSIGNMENT OF ERROR NO. VI

**THE TRIAL COURT ERRED, TO THE PREJUDICE OF APPELLANT, BY CONSOLIDATING THE TWO TRIALS FOR SEPARATE AND DISTINCT CASES AGAINST APPELLANT.**

## ASSIGNMENT OF ERROR NO. VII

**THE TRIAL COURT ERRED, TO THE PREJUDICE OF APPELLANT, BY DENYING APPELLANTS [SIC] MOTION TO SUPPRESS ALL EVIDENCE PRESENTED IN CASE NUMBER 0118.**

## ASSIGNMENT OF ERROR NO. VIII

**THE TRIAL COURT ERRED, TO THE PREJUDICE OF APPELLANT, BY DENYING APPELLANTS [SIC] MOTION TO SUPPRESS ALL EVIDENCE PRESENTED IN CASE NUMBER 0361.**

**{¶44}** For ease of discussion, we elect to address interrelated assignments together.

*Appellant's First Assignment of Error*

**{¶45}** In his first assignment of error, Appellant argues that there was insufficient evidence in both case number CR 2014 0118 and CR 2015 0361 to sustain his convictions. For the reasons outlined below, we disagree.

*Standard of Review*

**{¶46}** "Whether there is legally sufficient evidence to sustain a verdict is a question of law." *State v. Lyle,* 3rd Dist. Allen No. 1-14-41, 2015-Ohio-1181, ¶ 8 *citing State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. Sufficiency is a test of adequacy. *Id.* Under a challenge alleging insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id. quoting State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77.

*Analysis – Case Number CR 2014 0118*

**{¶47}** In case number CR 2014 0118, Appellant was found guilty in Count I of possession of drugs (cocaine) and guilty in Count II of possession of drugs (heroin), both in violation of R.C. 2925.11(A), which states:

(A) No person shall knowingly obtain, *possess*, or use a controlled substance or a controlled substance analog.

(Emphasis added). R.C. 2925.11(A).

**{¶48}** On appeal, Appellant argues that the State failed to produce *any* evidence proving that Appellant owned or possessed the contents (i.e. heroin and cocaine) of the motor vehicle in question. "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "'The issue of whether a person charged with drug possession knowingly possessed a controlled substance is to be determined from all the attendant facts and circumstances available.'" *State v. Frye,* 3rd Dist. Allen No. 1-17-30, 2018-Ohio-894, ¶ 50 *quoting State v. Brooks,* 3rd Dist. Hancock No. 5-11-11, 2012-Ohio-5235, ¶ 45. *See also, State v. Teamer,* 82 Ohio St.3d 490, 492, 1998-Ohio-193, 696 N.E.2d 1049 (1998).

**{¶49}** "'Possession of drugs can be either actual or constructive.'" *Id.* at ¶ 51, *quoting State v. Bustamante,* 3rd Dist. Seneca Nos. 13-12-26, 13-13-04, 2013-Ohio-4975, ¶ 25. "'A person has "actual possession" of an item if the item is within his immediate physical possession.'" *State v. Watts,* 3rd Dist. Hancock No. 5-12-34, 2016-Ohio-257, ¶ 11, *quoting State v. Williams,* 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, ¶ 23. "'A person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have

immediate physical possession of it." *Id. quoting Williams,* 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, ¶ 23. "Ownership need not be proven to establish constructive possession." *State v. Voll,* 3rd Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 18. "Furthermore, 'readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession.'" *Id. quoting State v. Ruby,* 149 Ohio App.3d 541, 2002-Ohio-5381, 778 N.E.2d 101, ¶ 36.

{¶50} The State may establish constructive possession by circumstantial evidence alone. *Id.* at ¶ 19. "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *Id.*

{¶51} In case number CR 2014 0118, the State produced competent and credible evidence establishing that Appellant had possession of the cocaine and heroin as charged. Specifically, Kunkleman testified that on March 21, 2014 at approximately 3:20 a.m., he was dispatched to a report of a suspicious vehicle sitting in the parking lot of 234 North Main Street. (Trial, 08/01/2017 Tr., Vol. I at 63-64). Kunkleman pulled up behind the vehicle to run the plates, and noticed that an African-American male was sitting in the driver's seat. (*Id.* at 66). The male, who was later identified as Appellant, was the sole individual in the vehicle. (*Id.*). As

Kunkleman exited his vehicle, Appellant exited the vehicle in which he was sitting. (*Id.* at 67). Appellant then began walking towards Kunkleman, and refused to engage him in conversation. (*Id.*). Shortly thereafter, Appellant turned around and walked back to towards the vehicle. (*Id.*). Kunkleman followed Appellant back to the vehicle, and noticed the overwhelming smell of marijuana coming from the car. (*Id.* at 68). Appellant was observed leaning into the driver's compartment and grabbing at something on the floorboard. (*Id.*). Appellant refused to comply with Kunkleman's request to exit the vehicle, and as a result Kunkleman pulled him away from the vehicle for officer safety. (*Id.*). Hillard, who had arrived at the scene simultaneously with Kunkleman, looked inside the vehicle and found a paper bag with cocaine in it sticking out from under the driver's seat. (*Id.* at 66, 71). Upon searching the center armrest, Kunkleman found a baggie that contained heroin inside it. (*Id.* at 71). Upon conducting a pat down of Appellant for officer safety, a large amount of money (over $5,000) was located on Appellant's person. (*Id.* at 70).

{¶52} This evidence, when viewed in a light most favorable to the State, could lead a rational trier of fact to find that Appellant had constructive possession of the drugs in the vehicle. Appellant was the only person in the vehicle at the time of the stop. Further, the drugs in the vehicle were located on the driver's side floorboard and the center console, in the proximity of Appellant's position as the

driver. While proximity to drugs alone is insufficient to establish constructive possession, proximity to the object does constitute some evidence of constructive possession. *State v. Rodgers,* 3rd Dist. Hancock No. 5-10-35, 2011-Ohio-3003, ¶ 30. Lastly, Appellant's furtive movements in the area where the cocaine was located is indicative of knowledge and possession.

{¶53} Given Appellant's conduct and the attending facts, we conclude that a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt in case number CR 2014 0118.

*Analysis –Case Number CR 2015 0361*

{¶54} Pertinent to this appeal, in case number CR 2015 0361, Appellant was found guilty in Count I of possession of drugs (cocaine), guilty in Count II of possession of drugs (heroin), and guilty in Count III of possession of drugs (marijuana), all in violation of R.C. 2925.11(A), which states:

> (A) No person shall knowingly obtain, *possess*, or use a controlled substance or a controlled substance analog.

(Emphasis added). R.C. 2925.11(A).

{¶55} In Count IV, Appellant was charged with illegal cultivation of marijuana, in violation of R.C. 2925.04(A), which states:

> (A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.

R.C. 2925.04(A).

{¶56} In Count V, Appellant was charged with having weapons while under disability, in violation of R.C. 2923.13(A)(3), which states:

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

R.C. 2923.13(A)(3).

{¶57} In support of his sufficiency-of-the-evidence challenge, Appellant argues that the State failed to provide evidence that linked Appellant with the contraband found at 1222 Catalpa Street. We find otherwise. Specifically, testimony at trial revealed that after Appellant was arrested, Appellant told law enforcement officials that: "I don't live here. I'm just seeing a girl." (Trial, 08/02/2017 Tr., Vol. I, at 145). But, when law enforcement questioned Appellant about the "girl," Appellant wasn't able to provide any information about her to law enforcement. (*Id.*).

{¶58} Moreover, after the search warrant was executed, authorities found a book bag in a bedroom closet that contained: a VISA gift card with Appellant's

-23-

name on it; a medical marijuana card with Appellant's personal identifiers on it; a Huntington Bank VISA card with Appellant's name on it; and Appellant's social security card and birth certificate. (*Id.,* Vol. II at 242). Also located within the residence were three handguns. (*Id.*, Vol. I 187-88). Authorities failed to find any women's or children's clothing in the residence. (*Id.,* Vol. II at 245). Contrary to Appellant's argument on appeal, there was competent and credible evidence that Appellant was the sole occupant of 1222 Catalpa Street at the time of the arrest, the protective sweep, and when the search occurred in the residence. We find that Appellant's theory of possession is inconsistent with the evidence.

{¶59} After viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crimes charged proven beyond a reasonable doubt in case number CR 2015 0361. Accordingly, we overrule Appellant's first assignment of error in its entirety.

*Appellant's Second Assignment of Error*

{¶60} Appellant argues that his convictions in both case number CR 2014 0118 and CR 2015 0361 were against the manifest weight of the evidence. For the reasons that follow, we disagree.

*Standard of Review*

**{¶61}** The Ohio Supreme Court has "'carefully distinguished the terms 'sufficiency' and 'weight' in criminal cases, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.'" *Lyle,* 3rd Dist. Allen No. 1-14-41, 2015-Ohio-1181, ¶ 9 *quoting Eastley v. Volkman,* 132 Ohio St.3d 328, 2010-Ohio-2179, 972 N.E.2d 517, ¶ 10.

**{¶62}** In analyzing a claim that a conviction was against the manifest weight of the evidence, an appellate court:

> sits as the "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. * * * The appellate court, "'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'"

*State v. Johnson*, 3rd Dist. Shelby No. 17-08-06, 2008-Ohio-4784, ¶ 4 *quoting State v. Jackson*, 169 Ohio App.3d 440, 2006-Ohio-6059, 863 N.E.2d 223, ¶14 (citations omitted). However, in sitting as the thirteenth juror the appellate court should give due deference to the findings made by the jury. *Id.*

*Analysis*

**{¶63}** The Eighth District Court of Appeals identified the following eight factors as a guide to assist a reviewing court in determining whether a decision of the trial court was against the manifest weight of the evidence:

1. A reviewing court is not required to accept the incredible as true;

2. Whether the evidence is uncontradicted;

3. Whether a witness was impeached;

4. What was not proved;

5. Certainty of evidence;

6. Reliability of evidence;

7. Whether witness' testimony is self-serving;

8. And whether evidence is vague, uncertain, conflicting, or fragmentary.

*State v. Mattison,* 23 Ohio App.3d 10, 14, 490 N.E.2d 926 (8th Dist.1985). We discuss the relevant factors to each underlying case below.

*Uncontradicted Evidence*

**{¶64}** Initially, we note that Appellant failed to introduce any evidence that contradicted the State's evidence at trial. In respect to case number CR 2014 0118, Appellant produced no evidence to contradict the State's testimony that on March 21, 2014 at approximately 3:00 a.m., the Lima Police Department was dispatched to 234 North Main Street in Lima, Ohio for a call of a suspicious vehicle sitting in

the parking lot. It is not disputed that the Appellant exited his vehicle when officers arrived, and when Kunkleman approached him, Appellant turned back and leaned into the car on the driver's side. It is further undisputed that officers could smell the smell of raw marijuana at this time and that officers grabbed Appellant and pulled him away from the vehicle for their safety.

{¶65} There is no dispute that the Appellant, when ordered to put his hands up in the air, disregarded the officer's commands, which led to him being detained. A pat down of Appellant produced a large sum of money and marijuana, which led to his arrest and the subsequent search of the vehicle, which produced a large amount of cocaine, marijuana, heroin, digital scales, and Appellant's billfold. With no testimony or evidence produced at trial to cast doubt upon this version of events, Appellant cannot contradict the elements of possession of cocaine and possession of heroin as established by the State in case number CR 2014 0118.

{¶66} In regards to case number CR 2015 0361, the State's uncontradicted evidence demonstrated that on January 17, 2015, after receiving an anonymous tip and surveilling the premises, law enforcement entered 1222 Catalpa Street after repeatedly requesting that Appellant come to the front door. Once inside the premises, and while conducting a protective sweep of the home, officers viewed a marijuana grow tent in plain view. Based on the information collected, officers obtained a search warrant and searched the premises in its entirety. During the

search, officers located credit cards, mail, and other personal effects bearing Appellant's name.

{¶67} While Appellant contends that no witness had personal knowledge that he occupied the premises, the evidence indicates otherwise. Specifically, many of Appellant's personal effects were found within the residence, which is indicative of occupation. Accordingly, we find that the uncontradicted evidence supports that Appellant was occupying the residence on January 17, 2015.

*Impeached Witness*

{¶68} A review of the record reveals that no witness for the State was impeached in either case number CR 2014 0118 or CR 2015 0361.

*Reliability of Evidence*

{¶69} With respect to case number CR 2015 0361, Appellant attempts to discredit the reliability of the testimony and evidence produced at trial, because "not one single witness [***] actually had personal knowledge of Appellant allegedly occupying the premises testified [to] at trial." (Br. of Appellant at 10). Appellant further classifies all of the testimony produced regarding occupation of the premises as "hearsay."

{¶70} However, we find that the State produced competent and credible evidence that Appellant was occupying 1222 Catalpa Street in Lima, Ohio at the time the officers conducted their raid. Specifically, officers testified that they

observed Appellant leave the back of the duplex in an attempt to flee, and then run back inside once he saw that officers had the duplex surrounded. Furthermore, the evidence established that officers personally observed Appellant leave out of the back of the residence prior to it being breached. With eyewitness testimony confirming that Appellant was, in fact, inside the residence, we find no merit in Appellant's argument in regards to reliability.

*Self-Serving Testimony*

{¶71} The record reveals that the trial court did not characterize any witness's testimony as self-serving in either case number CR 2014 0118 or CR 2015 0361. Accordingly, on review, we do not find any indicia of self-serving testimony in either case and Appellant does not argue that testimony was self-serving on appeal.

*Vague, Uncertain, Conflicting, or Fragmentary Evidence*

{¶72} In case number CR 2014 0118, Appellant points to the evidence produced at the suppression hearing to cast into doubt officers' testimony at trial. Specifically, Appellant argues that the officers, when testifying at the suppression hearing, described a "much more leisurely encounter at the suppression hearing than they did at trial." (Br. of Appellant at 10). However, Appellant fails to develop this argument and further fails to demonstrate how this "conflict" in testimonies between the suppression hearing and trial creates a manifest miscarriage of justice warranting

reversal. Even should Appellant establish that a true "conflict" exists in the evidence presented at the suppression hearing and the trial, and that such issue was properly before this Court, we find that the record contains competent, credible evidence to support the trial court's findings. *Phelps v. Horn's Crop Serv. Ctr.,* 3rd Dist. Wyandot No. 16-89-8, 1990 WL 157282, * 2 (holding that the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact).

{¶73} Accordingly, we find that the weight of the evidence supports Appellant's convictions. We further find that the jury did not lose its way and create a manifest miscarriage of justice in convicting Appellant of possession of cocaine and heroin in case number CR 2014 0118 or CR 2015 0361. Accordingly, we overrule Appellant's second assignment of error.

*Appellant's Third Assignment of Error*

{¶74} In his third assignment of error, Appellant argues that his trial counsel was ineffective, in part, because trial counsel failed to object to hearsay statements during trial. For the reasons that follow, we disagree.

*Standard of Review*

{¶75} "'When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that the counsel's representation fell

below an objective standard of reasonableness.'" *State v. Sanders*, 94 Ohio St.3d 150, 151, 2002-Ohio-350, 761 N.E.2d 18 *quoting Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052 (1984). Additionally, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Id.*, at 694. *See also, State v. Bradley*, 42 Ohio St.3d 136, 137, 538 N.E.2d 373 (1989).

**{¶76}** In analyzing a claim for ineffective assistance of counsel, this court's scrutiny of counsel's performance must be highly deferential, with a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bradley*, supra, at 142, *quoting Strickland*, supra, at 687-88. "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *Id.*

*Analysis*

**{¶77}** At the outset, we note that Appellant, during the course of the proceedings below, had five (5) different attorneys represent him. Interestingly, Appellant does not specify which trial counsel was ineffective. However, it appears from this assignment that Appellant questions the effectiveness of his trial counsel.

{¶78} Appellant initially argues that his trial counsel was ineffective because trial counsel failed to object to any of the hearsay regarding Appellant residing in the residence during the raid by police officers, as charged in case number CR 2015 0361. However, we note that the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel. *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103. *See also, State v. Holloway,* 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988) (failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel); *State v. Gumm,* 73 Ohio St.3d 413, 428, 1995-Ohio-24, 653 N.E.2d 253 *holding modified by State v. Wogenstahl,* 75 Ohio St.3d 344, 1996-Ohio-219, 662 N.E.2d 311 (the failure to make objections does not constitute ineffective assistance of counsel *per se,* as that failure may be justified as a tactical decision).

{¶79} Next, Appellant argues that his trial counsel's performance was ineffective because trial counsel did not *voir dire* Sergeant Dana Sutherland ("Sutherland"), the State's marijuana expert witness. This argument lacks merit for two reasons. First, the record reveals, and the Appellant concedes, that trial counsel objected to the expert being certified as an expert witness, and the trial court overruled the objection. (*See,* Trial Tr., Vol. II, at 286). And second, the record reveals that the Appellant's concerns with Sutherland's qualifications to testify as an expert were addressed by the trial court prior to trial. (Trial, 08/01/2017 Tr., Vol.

I, at 11). Given the trial court's rulings, we do not find that Appellant's trial counsel's performance fell below an objective standard of reasonable representation under the facts presented.

**{¶80}** Lastly, Appellant argues that trial counsel was ineffective because his trial counsel failed to file a proper motion to sever the counts at the appropriate time during trial. However, the record is clear, and the Appellant concedes, that objections to the State's motions to consolidate were made and a motion to sever was filed prior to trial. (*See,* CR 2014 0118, Doc. No. 139; CR 2015 0361, Doc. No. 48). Despite Appellant's objections and motion, the trial court found that the charges were of similar character and part of a common scheme or course of criminal conduct, then consolidated the cases and joined them for purposes of trial. (CR 2014 0118, Doc. No. 163; CR 2015 0361, Doc. No. 82). Thus, because the trial court had already ruled on Appellant's motion to sever, Appellant has failed to demonstrate that a subsequent trial counsel's performance fell below an objective standard of reasonableness by failing to file an additional motion to sever, and we overrule Appellant's third assignment of error in its entirety.

### *Appellant's Fourth Assignment of Error*

**{¶81}** In his fourth assignment of error, Appellant argues that the trial court erred by denying his motion to dismiss his cases based upon a speedy trial violation. Specifically, Appellant argues that the continuance granted at the request of the

State beyond the February 21, 2017 trial date was unreasonable. For the reasons that follow, we disagree.

*Standard of Review*

**{¶82}** "Our standard of review upon an appeal raising a speedy trial issue is to count the expired days as directed by R.C. 2945.71, et seq." *State v. King*, 3rd Dist. Marion No. 9-06-18, 2007-Ohio-335, ¶ 30. *See also, State v. DePue*, 96 Ohio App.3d 513, 516, 645 N.E.2d 745 (4th Dist.1994). "If any ambiguity exists, we construe the record in favor of the accused." *Id.*

**{¶83}** The applicable statutory speedy trial provision, R.C. 2945.71(C)(2), provides that a person charged with a felony shall be brought to trial within two hundred and seventy (270) days after the person's arrest. R.C. 2945.71(C)(2). In computing time under division (C)(2), "each day during which the accused is held in jail in lieu of bail on the pending charges shall be counted as three days." R.C. 2945.71(E).

**{¶84}** Further, R.C. 2945.73(B) provides:

> Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code.

R.C. 2945.73(B). "R.C. 2945.71 and R.C. 2945.73 are 'mandatory and must be strictly complied with by the State.'" *King* at ¶ 32, *quoting State v. Pudlock*, 44 Ohio St.2d 104, 105, 338 N.E.2d 524 (1975). "However, R.C. 2945.72 allows for

an extension of the time that the accused must be brought to trial under certain circumstances." *Id.*

*Analysis*

**{¶85}** In the instant matter, both the State and Appellant agree that Appellant's speedy trial rights were upheld throughout the proceedings up until Appellant's scheduled jury trial on February 21, 2017. However, at the request of the State, Appellant's trial was rescheduled for May 16, 2017, outside of the Appellant's statutory speedy trial period. Thus, the question before us is not whether Appellant was brought to trial within the statutorily permitted time frame, but rather, was the speedy trial violation permissible under the circumstances of the case. We answer that question in the affirmative.

**{¶86}** R.C. 2945.72, entitled "extension of time for hearing or trial," allows for an extension of time that the accused must be brought to trial under certain circumstances. R.C. 2945.72(H) provides:

> The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
>
> * * *
>
> (H) The period of any continuance granted on the accused's own motion, and the period of any *reasonable* continuance granted other than upon the accused's own motion.

(Emphasis added). R.C. 2945.72(H).

**{¶87}** The resolution of this issue, therefore, depends upon whether the trial court's continuance was reasonable. "Determining the 'reasonableness' of the continuance beyond the ninety-day stricture of R.C. 2945.71, invariably, 'depends on the peculiar facts and circumstances of a particular case.'" *State v. Glass,* 3rd Dist. Auglaize No. 2-04-01, 2004-Ohio-4402, ¶ 10, *quoting State v. Saffell,* 35 Ohio St.3d. 90, 91, 518 N.E.2d 934 (1988). "'In addition, precedent requires that such a continuance be necessary under the circumstances of the case.'" *Id. quoting Saffell,* 35 Ohio St.3d. 90, 91, 518 N.E.2d 934 (1988) *citing City of Aurora v. Patrick,* 61 Ohio St.2d 107, 108-09, 399 N.E.2d 1220 (1980).

**{¶88}** On February 3, 2017, the State requested a continuance of the trial date, due to the Ohio Supreme Court's decision in *State v. Gonzales. See, State v. Gonzales,* 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405, *reconsideration granted, decision vacated,* 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, *reconsideration denied,* 149 Ohio St.3d 1409, 2017-Ohio-2822, 74 N.E.3d 466. In *Gonzales,* the Ohio Supreme Court held that the offense level for possession of cocaine was determined only by the weight of the actual cocaine, not by the total weight of cocaine plus any filler. *Id.* at ¶ 22. This opinion was inconsistent with prior case law on the same topic. *Id.* at ¶ 51. Given the new purity requirements, the State requested a continuance to send Appellant's cocaine to a lab equipped to determine the weight of actual cocaine, separate from the filler weight.

**{¶89}** The trial court, on February 9, 2017, granted the State's request for a continuance and set Appellant's jury trial for May 16, 2017. (Case number CR 2014 0118, Doc. No. 182; case number CR 2015, Doc. No. 109). In granting the continuance, the trial court acknowledged that *State v. Gonzales* was a significant departure from previous precedent and custom. Furthermore, the trial court relied on the Seventh District Court of Appeal's decision in *State v. High,* wherein the Appellate court held that an extension request by the State for testing of evidence was reasonable. *State v. High,* 143 Ohio App.3d 232, 242, 2001-Ohio-3530, 757 N.E.2d 1176.

**{¶90}** We find that the continuance was reasonable in light of the need for additional time to conduct testing (of the drugs in question) in accordance with *Gonzales.* While Appellant argues that the State took "too long" (after the *Gonzales* decision was announced) to request the continuance, we find that the State's request was made *prior* to the already scheduled jury trial.

**{¶91}** Appellant further argues that the continuance was unreasonable because the trial court focused on its schedule in denying Appellant's motion to dismiss. However, "scheduling and docketing conflicts have been held to be reasonable grounds for extending an accused's trial date beyond the speedy trial limit date by both [the Appellate Court] and the Supreme Court of Ohio. *Glass,* 3rd Dist. Auglaize No. 2-04-01, 2004-Ohio-4402, ¶ 11. *See also, State v. Lee,* 48 Ohio

St.2d 208, 210, 357 N.E.2d 1095 (1976) (continuance due to "crowded docket & judge's conference" was reasonable). Thus, we find that the continuance was reasonable, and therefore met the exception requirement listed in R.C. 2945.72(H).

{¶92} For the foregoing reasons, we find Appellant's fourth assignment of error not well taken and overrule the same.

### *Appellant's Fifth Assignment of Error*

{¶93} In Appellant's fifth assignment of error, Appellant argues that the trial court was required to exclude Identification Officer Michael Carman's ("Carman") expert testimony, because the State did not comply with Crim.R. 16(K). For the reasons that follow, we find that the trial court did not err in allowing the State's expert witness to testify.

### *Standard of Review*

{¶94} "The trial court has broad discretion over evidentiary rulings, and such rulings will not be reversed on appeal absent an abuse of discretion." *State v. Workman,* 3rd Dist. Van Wert No. 15-06-09, 171 Ohio App.3d 89, 2007-Ohio-1360, 869 N.E.2d 713, ¶ 10. *See also, In re Sherman,* 3rd Dist. Hancock No. 05-04-47, 2005-Ohio-5888, ¶ 27. An "'abuse of discretion' implies that the trial court acted unreasonably, arbitrarily, or unconscionably." *Id. quoting Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for

that of the trial court. *Dindal v. Dindal,* 3rd Dist. Hancock No. 5-09-06, 2009-Ohio-3528, ¶ 6 citing *Blakemore, supra.*

*Analysis*

**{¶95}** Appellant alleges that the State violated Crim.R. 16(K) when it failed to provide an expert witness' report prior to the start of Appellant's jury trial. Crim.R. 16(K) states:

> An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

Crim.R. 16(K). Additionally, Crim.R. 16(L), entitled regulation of discovery, goes on to provide:

> The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

Crim. R. 16(L).

**{¶96}** Initially, we note that the State concedes that they should have provided Appellant with an expert report prior to Appellant's jury trial, pursuant to

Crim. R. 16(K). We also note that the Appellant does not allege that the exclusion of Carman's testimony would have changed the outcome of the trial. Rather, Appellant argues that Carman's testimony was "very important" to the State's case and its inclusion (over objection) warrants him a new trial. Appellant directs this Court to the Eleventh District Court of Appeal's decision in *State v. McGhee. State v. McGhee,* 11th Dist. Trumbull No. 2014-T-0106, 2017-Ohio-5773. In *McGhee,* the Eleventh District held that the purpose of Crim.R. 16(K) is to prevent surprise and trial by ambush. *Id.* at ¶ 19. While the State, in *McGhee,* had provided their expert witness' name to defense counsel at the appropriate time, it had failed to provide the expert's report to defense counsel until a couple days prior to trial. *Id.* Finding that the expert testimony was "vital" to the State's case, the court of appeals reversed the defendant's conviction and ordered a new trial. *Id.* at ¶¶ 20-21.

{¶97} However, Appellant's reliance on *McGhee* ignores precedent from this Court regarding the failure to provide an expert report. Specifically, in *State v. Opp,* under circumstances factually similar to the case *sub judice,* the State failed to provide an expert report. *State v. Opp,* 3rd Dist. Seneca No. 13-13-33, 2014-Ohio-1138, ¶ 7. Relying, in part, on the Fifth District's decision in *State v. Viera,* we concluded that while Crim.R. 16(K) contains mandatory language for compliance, such language, when read in context with Crim.R. 16(L), does not abolish the trial court's discretion in regards to evidentiary matters. *Id.* at ¶ 10. *See, State v. Viera,*

5th Dist. Delaware No. 11CAA020020, 2011-Ohio-5263, ¶¶ 21-23 (Appellate court found that the trial court did not err in allowing an expert to testify in spite of an untimely expert's report). We then went on to analyze other cases involving a discovery violation with respect to an expert's report in accordance with Crim.R. 16(K). *Opp*, after its examination of precedent from various appellate courts in Ohio, found that while the State committed a discovery violation, that trial court did not err in allowing the State's expert witness to testify on a very limited issue which did not prejudice the defendant. *Id.* at ¶ 20.

{¶98} Relying on *Opp,* we find that the trial court did not err in allowing the State to present Carman's *limited* expert testimony at trial. Specifically, the record reveals that Carman was not testifying on the specifics of the case at hand, but rather, provided testimony regarding his experience, in general, involving why fingerprints *may or may not* exist on a handgun. (Trial, 08/02/2018 Tr., Vol. I, at 209). Moreover, the trial court specifically found that Carman was not testifying about the evidence in Appellant's case, but merely on generalities involving a lack of fingerprints on a handgun. (*Id.*). Accordingly, we find that the trial court did not abuse its discretion by overruling Appellant's Crim.R. 16(K) objection.

{¶99} Lastly, even if we were to find that the trial court erred in admitting Carman's testimony, we would affirm the ruling under the harmless error doctrine. Harmless error is "'any error, defect, irregularity, or variance, which does not affect

[a] substantial right[] [***]'". *State v. Wilson,* 3rd Dist. Allen No. 1-09-53, 2010-Ohio-2947, ¶ 26 *quoting* Crim.R. 52(A). Furthermore, "harmless error does not affect the outcome of the case and, thus, does not warrant a judgment to be overturned or set aside." *Id.*

**{¶100}** For the reasons discussed above, we overrule Appellant's fifth assignment of error.

### *Appellant's Sixth Assignment of Error*

**{¶101}** In his sixth assignment of error, Appellant argues that the trial court erred by consolidating his two trials. Specifically, Appellant argues that the evidence was not "simple and direct," which would permit joinder of the cases. We disagree.

### *Standard of Review*

**{¶102}** "A defendant who asserts that joinder is improper has the burden of making an affirmative showing that his rights will be prejudiced thereby." *State v. Shurelds,* 3rd Dist. Allen No. 1-91-28, 1992 WL 147559, *2, *cause dismissed,* 66 Ohio St.3d 1430, 608 N.E.2d 760 (1993). Furthermore, a defendant "must demonstrate that the trial court abused its discretion in refusing to separate the charges for trial." *State v. Torres,* 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). An "'abuse of discretion' implies that the trial court acted unreasonably, arbitrarily, or unconscionably." *Id. quoting Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d

1140 (1983). "When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court." *Id.* Absent a clear showing of abuse of discretion, a trial court's decision regarding joinder will not be disturbed. *Torres, supra.*

*Analysis*

**{¶103}** Crim.R. 13, entitled "trial together of indictments or information or complaints," provides the statutory authority for joinder, which states:

> The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.
>
> The court may order two or more complaints to be tried together, if the offenses or the defendants could have been joined in a single complaint. The procedure shall be the same as if the prosecution were under such single complaint.

Crim.R. 13.

**{¶104}** In determining whether the indictments could have been joined in a single indictment, Crim.R. 8(A) states: "[t]wo or more offenses may be charged in the same indictment, * * * if the offenses charged, * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A).

{¶105} In examining the purposes and policies behind joinder, courts have expressed that: "[j]oinder and the avoidance of multiple trials are favored to conserve judicial resources, including time and expense, reduce the chance of incongruous results in successive trials before different juries, and diminish inconvenience to the witnesses." *State v. Clifford,* 135 Ohio App.3d 207, 211, 733 N.E.2d 621 (1st Dist.1999), *cause dismissed*, 87 Ohio St.3d 1422, 717 N.E.2d 1108 (1999). "To prevail on a claim that the trial court erred in consolidating charges for trial, the defendant must demonstrate affirmatively (1) that his rights were prejudiced, (2) that at the time that the trial court ruled on the motion to consolidate, he provided the court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, *and* (3) that given the information provided to the court, it abused its discretion in consolidating the charges for trial." (Emphasis added). *Id.*

{¶106} In reviewing Appellant's argument, we find that the Appellant failed to demonstrate affirmatively exactly how his rights were prejudiced by joinder. Even though Appellant argues that questions exist concerning his actual dominion and control over items of contraband, we find this argument addresses the sufficiency of the evidence, not whether Appellant was prejudiced by the joinder of the cases.

{¶107} Next, Appellant argues that the evidence in one case would not have been admissible in the other case. However, this is not the standard for joinder announced in Crim.R. 13 or Crim.R. 8(A).

{¶108} Lastly, Appellant argues that "it is undeniable that juries do not like fugitives." (*See,* Br. of Appellant at 18). Appellant then argues that this fact, standing alone, was sufficient to establish that the trial court abused its discretion by joining the two cases. However, Appellant provides us no support for such assertion. Thus, when reviewed in its entirety, Appellant's argument fails to demonstrate affirmatively that his rights were prejudiced and thus, Appellant has failed to demonstrate that the trial court erred in joining the two cases.

{¶109} For the reasons set forth above, we overrule Appellant's sixth assignment of error.

### *Appellant's Seventh and Eighth Assignments of Error*

{¶110} Appellant argues that the trial court erred by denying his motions to suppress in each of his underlying cases. For the reasons that follow, we disagree.

### *Standard of Review*

{¶111} "A review of the denial of a motion to suppress involves mixed questions of law and fact." *State v. Lewis*, 3rd Dist. Auglaize No. 2-16-13, 2017-Ohio-996, 86 N.E.3d 974, ¶ 8 *citing State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes

the role of trier of fact, and as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id*. "An appellate court must accept the trial court's findings of facts if they are supported by competent, credible evidence." *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*.

*Analysis – Motion to Suppress in Case Number CR 2014 0118*

**{¶112}** Appellant argues that in case number CR 2014 0118, law enforcement officials lacked probable cause or reasonable suspicion of criminal activity to detain Appellant. Appellant further argues that law enforcement officers impermissibly detained him after he chose not to engage Kunkleman (in conversation) and walked away from officers. And lastly, Appellant argues that the search of the vehicle started *prior* to his arrest. Appellant contends that these three factors, collectively, resulted in a violation of his Fourth Amendment rights.

**{¶113}** "The Fourth Amendment to the United States Constitution generally prohibits warrantless searches and seizures, and any evidence obtained during an unlawful search or seizure will be excluded from being used against the defendant." *Frye,* 3rd Dist. Allen No. 1-17-30, 2018-Ohio-894, ¶ 63. "Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio

-46-

Constitution explicitly provides that violations of its provision against unlawful searches or seizure will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment." *State v. Jenkins,* 3rd Dist. Union No. 14-10-10, 2010-Ohio-5943, ¶ 9 *citing Mapp v. Ohio,* 367 U.S. 643, 649, 81 S.Ct. 1684 (1961).   The primary purpose of the exclusionary rule is to remove the incentive to violate the Fourth Amendment. *Id. citing State v. Jones,* 88 Ohio St.3d 430, 434, 2000-Ohio-374, 727 N.E.2d 886 overruled on other grounds by *State v. Brown,* 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175 (2003).

{¶114} "The Fourth and Fourteenth Amendments to the United States Constitution prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification." *State v. Andrews,* 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991) *citing United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690 (1981); *Reid v. Georgia,* 448 U.S. 438, 440, 100 S.Ct. 2752 (1980); *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868 (1968).

{¶115} However, in crafting exceptions to Fourth Amendment violation claims, "the United States Supreme Court [in *Terry*] held that a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concluded that the individual is engaged in criminal activity." *Id. citing Terry,* 392 U.S. 1, 21, 88 S.Ct. 1868 (1968).  "In assessing that conclusion,

the officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id. quoting Terry,* at 21.

{¶116} Upon reviewing the record, we find that the State produced competent and credible evidence that the officers had specific and articulable facts, along with the rational inferences from those facts, to reasonably warrant the intrusion into Appellant's vehicle. The evidence produced at the suppression hearing demonstrated that law enforcement responded to a call that a suspicious vehicle (with its car alarm going off[5]) was parked in the parking lot of 234 North Main Street in Lima, Ohio in the early morning hours of March 21, 2014. (Mot. to Suppress Hrg., 06/30/2016 Tr. at 8-9). Kunkleman, who was the first officer to respond to the call, testified that Appellant was out of the vehicle when he (Kunkleman) exited his vehicle, and refused to engage him (Kunkleman) in conversation. (Mot. to Suppress Hrg., 06/30/2016 Tr. at 10). Rather, Appellant turned back to the vehicle and started to lean into the driver's area, where Kunkleman was unable to observe what Appellant was doing with his hands. (*Id.*). Kunkleman also testified that when he approached Appellant's vehicle, he smelled

---

[5] Dash cam video footage entered into evidence revealed that a car alarm was going off when officers arrived. (*See,* Mot. to Suppress Hrg., 06/30/2016, State's Ex. 2 at 3:26:20 AM).

an overwhelming odor of marijuana[6] emanating from the vehicle. (*Id.*). Kunkleman then shined his flashlight into Appellant's vehicle and observed a digital scale laying on the driver's side floorboard. (*Id.* at 11). Kunkleman testified that as a result of Appellant's actions, the smell of marijuana, and the observation of a digital scale on the floorboard, he decided to detain Appellant for his safety. (*Id.* at 11-12).

{¶117} Hillard, who observed the interaction between Appellant with Kunkleman, testified that he smelled the odor of marijuana coming from Appellant's vehicle. (*Id.* at 42). Hillard testified that when he looked inside the vehicle he saw, in plain view, cellphones, a digital scale, and raw marijuana in the center console, as well as a brown paper bag partially sticking out from under the seat. (*Id.* at 42-43). Hillard opened the brown paper bag and saw what he believed to be crack cocaine in it. (*Id.* at 43). Based on what was located in the vehicle, Appellant was placed under arrest. (*Id.*).

{¶118} We find, upon the totality of the circumstances, that Kunkleman and Hillard had probable cause to suspect that criminal activity was afoot, warranting further investigation. We further find that the search was not based solely upon "an unlawful arrest" of the Appellant, but upon Appellant's actions, coupled with observations of the officers and the smell of raw marijuana. Thus, the trial court did

---

[6] We note that the smell of marijuana, alone, by a person qualified to recognize the odor, sufficiently establishes probable cause to search the vehicle from which the marijuana odor is detected. *State v. Moore,* 90 Ohio St.3d 47, 2000-Ohio-10, 734 N.E.2d 804.

not err in denying the motion to suppress based upon the warrantless search of the vehicle and the seventh assignment of error is overruled.

*Analysis – Motion to Suppress in Case Number CR 2015 0361*

{¶119} Testimony from the suppression hearing in case number CR 2015 0361 revealed the following: On January 12, 2015, Godfrey, a member of the West Central Ohio Crime Task Force, received a telephone call from the landlord of 1222 Catalpa Street in Lima, Ohio regarding Appellant living in part of the duplex that was not rented to him.[7] (Mot. to Suppress Hrg., 10/20/2018 Tr. at 6-7). Godfrey was further informed that a maintenance man for the Catalpa residence had attempted to inspect the residence but was denied entry by Appellant. (*Id.* at 8). Godfrey knew Appellant had active warrants for his arrest, so he set up a surveillance of 1222 Catalpa Street on January 13, 2015. (*Id.* at 8-9). On January 17, 2015, Godfrey observed a Chrysler 300 in the driveway with temporary tags. (*Id.* at 10). When the Chrysler 300 left the residence, Godfrey followed the vehicle. (*Id.* at 11). The Ohio State Highway Patrol, in conjunction with the West Central Ohio Crime Task force, conducted a traffic stop of the vehicle due to a window tint violation. (*Id.*). Kunkleman, who was assisting Godfrey with 1222 Catalpa Street surveillance, spoke with the individuals in the Chrysler 300 and learned that they were visiting their friend "Ray" at the Catalpa residence in question. (*Id.* at 12).

---

[7] The record suggests that the landlord identified the Appellant after seeing a local "most wanted" television news report.

The passenger of the Chrysler identified "Ray" as Appellant, and informed officers that Appellant had been living at the address for about a month. (*Id.* at 12). Because of this information, Godfrey verified that Appellant had active warrants and then set up a perimeter around 1222 Catalpa Street to arrest Appellant. (*Id.*).

{¶120} After the residence was surrounded, Godfrey knocked on the front door and ordered Appellant to come out. (*Id.* at 13). Instead, Appellant exited the rear of the house, but quickly ran back to the residence after observing law enforcement officials surrounding the duplex. (*Id.*). Officers eventually gained entry into the house, and the Appellant was arrested without incident. (*Id.* at 15). After Appellant's arrest, law enforcement officers conducted a protective sweep of the residence to make sure that there were no other individuals or threats within the house. (*Id.*). In conducting the protective sweep of the residence, law enforcement officials observed a black tent in one of the rooms. (*Id.*). Because the tent was large enough for someone to hide in, officers looked inside it, finding marijuana plants and a "grow operation" inside. (*Id.* at 15-16).

{¶121} Based on observing the marijuana grow tent in the residence, officers secured the residence and sought out a search warrant for the premises. (*Id.* at 17-18). The reviewing judge found probable cause and signed the affidavit/search warrant for the residence. (*Id.* at 39-40; State's Ex. 1). Based on the search of the

residence, law enforcement officials found guns, drugs, electronics, I.D.'s, and paperwork. (*Id.* at 41; State's Ex. 1).

{¶122} "In *Payton* [*v. New York*], the United States Supreme Court concluded that 'for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" *State v. Crawford,* 3rd Dist. Logan No. 8-04-21, 2005-Ohio-243, ¶ 24 *quoting Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371 (1988). "Under *Payton,* therefore, officers may effectuate an arrest warrant at a location when they believe that the subject of the warrant lives at a residence and that belief is supported by probable cause." *Id.* Appellant asserts that officers lacked probable cause to enter the premises. We find otherwise. Specifically, law enforcement received a tip that Appellant was residing in a residence in Lima, and as a result of that tip officers set up a surveillance to see if they observed Appellant come or go. While they did not observe Appellant leave the residence, they did observe another individual leave the residence, and after a lawful traffic stop, that individual disclosed that Appellant was, in fact, inside the residence. Based on those two factors, law enforcement attempted to enter the residence. However, prior to actually entering the residence to secure Appellant, Appellant was observed leaving the residence out the back and then returning inside the residence once he observed law enforcement officials

outside. Thus, under the totality of the circumstances, we find law enforcement had probable cause to enter 1222 Catalpa Street.

**{¶123}** Next, Appellant contends that the protective sweep of the residence was unlawful, and as a result the search warrant and affidavit that was obtained as a result of that sweep was unconstitutional. However, as the Ohio Supreme Court held in *State v. Adams,* "[o]fficers making arrests in a home are permitted to conduct a protective sweep, which is a 'quick and limited search of the premises, incident to an arrest and conducted to protect the safety of the police officers and others.'" *State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 188 *quoting United States v. Stover,* 474 F.3d 904, 911 (6th Cir.2007). Furthermore, as the United States Supreme Court recognized in *Maryland v. Buie,* a protective sweep "occurs as an adjunct to the serious step of taking a person into custody for the purpose of prosecuting him for a crime." *Maryland v. Buie,* 494 U.S. 325, 333, 110 S.Ct. 1093 (1990). Because an in-home arrest puts the officer at the disadvantage of being on his adversary's "turf," officers are permitted to sweep the residence for hidden individuals for their own protection. *Id.*

**{¶124}** And lastly, Appellant argues that the trial court failed to suppress evidence concerning the contents of a Kindle and an IPad found in the residence. Appellant argues that because "virtually every electronic utensil and gadget in existence has some level of computer mechanism involved," the search warrant

authorizing a search of "computers, computer hardware, computer software, cell phones and the contents…any and all material evidence of violations" was overly broad.

**{¶125}** "The particularity requirement of the Fourth Amendment was a response to 'those general warrants known as writs of assistance under which officers of the Crown had so bedeviled the colonists.'" *State v. Armstead,* 9th Dist. Medina No. 06CA0050-M, 2007-Ohio-1898, ¶ 10 *quoting Stanford v. State of Tex.,* 379 U.S. 476, 481, 85 S.Ct. 506 (1965). "A proper search warrant leaves nothing to the discretion of the officer executing it: 'the requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" *Id. quoting State of Tex*., at 485.

**{¶126}** However, not all broad or generic descriptions of things to be seized are invalid under the Fourth Amendment. "A broad and generic description is valid if it 'is as specific as circumstances and nature of the activity under investigation permit' and enables the searchers to identify what they are authorized to seize." *Id. quoting United States v. Harris,* 903 F.2d 770, 775 (10th Cir.1990). Contrary to Appellant's argument, we find that that the "computer" language of search warrant

notified searchers what they were authorized to seize, in this case, an electronic tablet and an IPad.

**{¶127}** Furthermore, as correctly noted by the trial court, even if the warrant failed the particularity test, the "good-faith exception" to the exclusionary rule would apply in this instance. As this Court held in *State v. McClanahan,* "the [United States Supreme] Court determined that the exclusionary rule of the Fourth Amendment 'should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.'" *State v. McClanahan,* 3rd Dist. Seneca No. 13-03-02, 2003-Ohio-4279, ¶ 18 *quoting State v. George,* 45 Ohio St.3d 325, 330, 544 N.E.2d 640 (1989) *citing United States v. Leon,* 468 U.S. 897, 918-19, 104 S.Ct. 3405 (1984). In the case at hand, there was no testimony regarding bad faith on part of the officers who searched the residence where Appellant was hiding.

**{¶128}** For the foregoing reasons, we overrule Appellant's eighth assignment of error.

### *Conclusion*

**{¶129}** Having found no error prejudicial to Appellant herein in the particulars assigned and argued, we overrule all of Appellant's assignments of error.

Case Nos. 1-17-44 and 1-17-45

Accordingly, we affirm the judgments of the Allen County Common Pleas Court.

**_Judgments Affirmed_**

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**