The STATE of Ohio, Appellee,

v.

JACKSON, Appellant.

[Cite as State v. Jackson, 169 Ohio App.3d 440, 2006-Ohio-6059.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–05–068.

Decided Nov. 17, 2006.

442

Kevin J. Baxter, Erie County Prosecuting Attorney, and Mary Ann Barylski, Assistant Prosecuting Attorney, for appellee.

Laura A. Perkovic, for appellant.

PIETRYKOWSKI, Judge.

{¶ 1} This case is before the court on appeal of a judgment of the Erie County Court of Common Pleas, which, after a jury trial, found appellant, Jamarcus Jackson, guilty of three complicity offenses with firearm specifications as to each. For the reasons set forth herein, we affirm the trial court's judgment of conviction on the three complicity offenses, but reverse the judgment of conviction on the gun specifications and remand the cause for resentencing.

{¶ 2} On April 14, 2005, appellant was indicted on two counts of complicity to commit aggravated robbery and one count of felonious assault. On May 12, 2005, a firearm specification was added to each count. The charges stemmed from a March 25, 2005 incident at the Fallen Timbers apartment complex in Sandusky, Erie County, Ohio, in which Jeremy Griggs and Timothy Olivares were injured.

{¶ 3} At trial, the facts presented were as follows. Appellant was an acquaintance of Griggs's sister. Appellant had been spending some time at Griggs's residence in connection with this relationship for about a month, beginning in February 2005. At about this same time, Griggs received a $660 reward from the Sandusky Police Department for a tip he had provided in an unrelated criminal case.

{¶ 4} On March 25, 2005, at approximately 10:00 p.m., Griggs and Olivares arrived at the apartment complex pursuant to a request from Griggs's sister to pick up appellant. Appellant had allegedly run out of gas for his vehicle. Upon arrival in the apartment complex parking lot, Griggs called DeShaun Jackson's cell phone to make sure they went to the correct apartment. DeShaun appeared at the door and waved for Griggs and Olivares to come into the apartment.

{¶ 5} Upon entering the apartment, Griggs noticed that in addition to DeShaun being in the apartment, another acquaintance was present, Sam Newell. Griggs followed DeShaun and Newell into the kitchen and began talking with them. Griggs did not see appellant and was told that appellant was getting ready. Griggs noticed a gun lying on the kitchen counter. Griggs recognized it as one belonging to appellant—a chrome revolver with rust on it.

{¶ 6} Suddenly, DeShaun punched Griggs in the face, fracturing his nose. DeShaun ordered Griggs to the ground. At this time, Olivares, who was in the nearby living room, pulled his fist back as if ready to hit DeShaun, but appellant, now in the living room, stated, "[D]on't even try it." Olivares tried to run for the door, but was caught by appellant, DeShaun, and Newell in the living room. Olivares saw DeShaun reach for a gun in his waistband. Olivares was struck hard on the head with a blunt object. He was then kicked in the back. He was momentarily rendered unconscious. He sustained a "crush type" head injury with possible concussion and required seven to eight stitches in his head.

{¶ 7} While Griggs was on the ground, DeShaun went through Griggs's pockets and took $420. While Olivares was down, someone went through his pockets and took his car keys. Griggs and Olivares were ordered to get up, and they started towards the front door. They were ordered to leave by the back door by DeShaun. Appellant, DeShaun, and Newell followed. Griggs and Olivares ran for a couple of blocks before stopping at a house, flagging down a police cruiser, and getting emergency medical attention.

{¶ 8} Appellant called Griggs a day or so later. In the conversation, appellant was laughing and making comments about Griggs's need for money. Appellant further told Griggs to ask Olivares "how it felt when I hit him."

{¶ 9} Three days later, a warrant was issued for appellant's arrest. After a short pursuit, the police arrested appellant at a residence and found a gun under a mattress at that residence—a chrome revolver with rust on it. It was subsequently test fired by the police and found to be operable. Appellant also had $337 in cash on his person when he was arrested. The gun that had been in DeShaun's waistband was never found.

{¶ 10} The jury found appellant guilty of the first two counts in the indictment, including the firearm specifications. Regarding Count 3, the jury found appellant guilty of complicity to commit felonious assault with a firearm specification. This appeal followed.

{¶ 11} On appeal, appellant raises the following assignments of error:

{¶ 12} "I. The verdict of the jury finding appellant guilty of the charges and gun specifications is against the manifest weight of the evidence.

{¶ 13} "II. The trial court erred in ordering three years actual incarceration for each of the firearm specifications."

{¶ 14} In appellant's first assignment of error, he contends that the verdict was against the manifest weight of the evidence. Under a manifest-weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668. The appellate court, " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.' " Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 15} Appellant argues that the manifest weight of the evidence did not support his convictions of complicity to aggravated robbery and complicity to felonious assault. R.C. 2923.03, the complicity statute, provides:

{¶ 16} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

{¶ 17} " * * *

{¶ 18} "(2) Aid or abet another in committing the offense."

{¶ 19} In *State v. Johnson* (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus, the Supreme Court of Ohio held: "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime."

{¶ 20} Appellant contends that there is no evidence demonstrating any connection between his phone call to Griggs's sister for a car ride and DeShaun's independent acts of assault and robbery of Griggs and Olivares. In opposition, appellee points to Griggs's testimony concerning appellant's actions after Griggs was punched in the face by DeShaun. According to that testimony, appellant said to Olivares when he took a defensive stance, "[D]on't even try it." However, appellant insists that arguably this statement could be interpreted as a warning to Olivares, for his own benefit, not to become involved. We do not find this interpretation to be in conformity with the manifest weight of the evidence.

{¶ 21} The fact that appellant shared the criminal intent of DeShaun can be inferred from the circumstances surrounding the crime. With regard to evidence that appellant's request for a ride via Griggs's sister was part of a planned set-up, Griggs was carrying a substantial amount of cash that he had recently received from the Sandusky Police Department for a tip in an unrelated crime. Griggs's receipt of this money was generally known in his household. Griggs testified that through his mother, he knows one of the detectives in the department. Griggs also testified that appellant had been spending quite a bit of time at Griggs's house because of appellant's relationship with Griggs's sister. There was also evidence of appellant's participation during the incident, even beyond his verbal warning to Olivares. The testimony reveals that appellant participated in catching Olivares at the door so he could be assaulted and in subsequently "escorting" the victims out the back door. Finally, Griggs testified relative to appellant's admission-like phone conversations after the incident. The manifest weight of the evidence supports the jury's conclusion that appellant aided and abetted DeShaun in committing aggravated robbery and felonious assault.

{¶ 22} Appellant also argues that the manifest weight of the evidence did not support his firearm-specification convictions. The one-year mandatory firearm specification is described in R.C. 2941.141, which states: "[T]he offender had a firearm *on or about the offender's person or under the offender's control* while committing the offense." (Emphasis added.)

{¶ 23} The definition of a firearm is found in R.C. 2923.11(B):

{¶ 24} "(1) 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

{¶ 25} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."

{¶ 26} To be convicted of a firearm specification, the state must prove that the firearm existed and that it was operable at the time of the offense. *State v. Murphy* (1990), 49 Ohio St.3d 206, 208, 551 N.E.2d 932. "However, such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." Id. at syllabus.

{¶ 27} In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which includes any implicit threat made by the individual in control of the firearm. *Thompkins,* 78 Ohio St.3d at 385, 678 N.E.2d 541. The specification can be proven beyond a reasonable doubt by circumstantial evidence. Id.

{¶ 28} Appellant's arguments center on the fact that there were apparently two guns involved in the incident. The first was the one lying on the kitchen counter that Griggs recognized as belonging to appellant—chrome with rust spots. The second was the one that DeShaun pulled from his waistband just before Olivares was struck on the head. As to the first gun, appellant contends that it was never shown to be under anyone's control or operable at the time of the offense. We clearly disagree as to the operability. Evidence of postseizure test firing may prove operability of a firearm. See *State v. Conway,* 8th Dist. No. 86140, 2005-Ohio-6634, 2005 WL 3436346; *State v. Johnson* (Aug. 20, 1993), 6th Dist. No. L-92-255, 1993 WL 313593. There was such evidence in the present case through the testimony of Sandusky Police Detective John Orzech, who test-

fired the gun. Thus, the finding that appellant's gun was operable was not against the manifest weight of the evidence. With regard to whether appellant had this gun on or about his person or under his control during the offense, the evidence is more problematic.

{¶ 29} There are drug-possession cases in which courts have upheld the denial of a motion for acquittal on a gun specification even though no witness observed the defendant actually touch the gun during the commission of the underlying drug-possession offense. The owner of a gun was found to have the gun "under his control" for purposes of the firearm specification, even when it was lying in another room or in the console of the defendant's spouse's car. See *State v. Brown* (1995), 107 Ohio App.3d 194, 668 N.E.2d 514; *Conway*, supra; *State v. Benton*, 8th Dist. No. 82810, 2004-Ohio-3116, 2004 WL 1352843. Proximity of the gun not only to the defendant, but also to the seized drugs, were factors. The court in *Benton* noted that " 'the underlying purpose of the gun specification [is] to deter possession or control of firearms during the commission of crimes due to the safety hazards such possession or control poses to the public and arresting officers.' " *Benton* at ¶ 30, quoting *State v. Mills* (Sept. 28, 1999), 10th Dist. No. 98AP–1273, citing *State v. Powell* (1991), 59 Ohio St.3d 62, 63, 571 N.E.2d 125. The *Benton* court also noted that given this purpose, and in light of his admission that the gun belonged to him, it was apparent that the appellant had sufficient control over the firearm during the commission of the underlying drug-possession offense to pose a threat, if not to the arresting officers, to the public. In *Benton* and *Conway*, the Eighth District Court of Appeals apparently approved of the concept of "constructive possession" in conjunction with a firearm specification. " 'Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession.' " *Benton* at ¶ 17, fn. 2, citing *State v. Hankerson* (1982), 70 Ohio St.2d 87, 24 O.O.3d 155, 434 N.E.2d 1362, syllabus; *Conway*, 2005-Ohio-6634, at ¶ 11. Further, " 'constructive possession may be achieved by means of an agent.' " *State v. Evans*, 10th Dist. No. 01AP–1112, 2002-Ohio-3322, 2002 WL 1379292, at ¶ 61, quoting *State v. Hardy* (1978), 60 Ohio App.2d 325, 327, 397 N.E.2d 773.

{¶ 30} We find this line of cases to be distinguishable from the present case. In these cases the principle offense was possession of drugs, not aggravated robbery or felonious assault. Naturally, facts revealing that the offender's gun was in very close proximity to the drugs would lend itself to an argument of constructive possession of the firearm while committing the drug-possession offense.

{¶ 31} In the present case, based on Griggs's testimony relative to appellant's gun's distinctive characteristics, the gun lying on the kitchen counter

belonged to appellant. However, the manifest weight of the evidence does not support the conclusion that either appellant or DeShaun had the gun on or about his person or under his control while committing the offense. Although there was testimony that the living room and kitchen were next to each other, there was no testimony that appellant was ever in the kitchen at any time during the offense. Therefore, we find that for purposes of the gun specification in this complicity-to-aggravated-robbery and felonious-assault case, the manifest weight of the evidence does not support that appellant had his gun on or about his person or under his control during the commission of the offenses.

{¶ 32} Regarding the second gun, appellant contends that DeShaun's use of a weapon should not be imputed to appellant. Specifically, appellant urges this court to "re-visit" the holding of the Supreme Court of Ohio in *State v. Chapman* (1986), 21 Ohio St.3d 41, 21 OBR 327, 487 N.E.2d 566. In *Chapman*, the court held that an individual indicted for and convicted of violating R.C. 2911.01, aggravated robbery, and of a firearm specification under R.C. 2941.141 is subject to sentencing enhancement pursuant to former R.C. 2929.71, regardless of whether he or she was the principal offender or an unarmed accomplice. Thus, an accomplice to a crime is subject to the same prosecution and punishment as the principal offender under R.C. 2923.03(F). *State v. Hanning* (2000), 89 Ohio St.3d 86, 92, 728 N.E.2d 1059.

{¶ 33} Appellant urges this court to "re-visit" *Chapman* based on *Hanning*, in which the court held that the complicity statute does not apply to the juvenile bindover criteria set forth in R.C. 2151.26. However, *Hanning*, a juvenile bindover case, did not overrule *Chapman*. Therefore, DeShaun's use of a weapon can be imputed to appellant.

{¶ 34} However, there is an issue as to a lack of evidence of the operability of the gun used by DeShaun which was never found. Firearms have been found to be operable not only based on test-firing, but also upon circumstances implying that the gun was operable, or capable of propelling a bullet. Such implicit threats have been found when the offender not only struck a victim with gun, but pointed a gun at a victim, implying the ability to shoot the victim. See *State v. Woods*, 5th Dist. No.2002CA00006, 2002-Ohio-4542; *State v. MacDonald*, 2nd Dist. No. 19100, 2002-Ohio-4969. In the present case DeShaun's gun was never found and tested to be operable. Nor did DeShaun ever make any verbal or physical threats with the gun, or imply that he would shoot either victim. Thus, there was no implication from the circumstances that the gun was operable.

{¶ 35} We cannot allow appellee to "blend" the qualifications of the two guns at issue. One—appellant's gun lying on the kitchen counter—was operable, but not on or about the offender's person or under the offender's control while committing the offense. The other—DeShaun's gun in his waistband—was on or

about the offender's person or under the offender's control while committing the offense, but was not proven, even implicitly, to be operable. Therefore, appellant's first assignment of error is well taken as to the gun specification only.

{¶ 36} Appellant's second assignment of error is moot since the entire gun specification conviction is being reversed.

{¶ 37} Upon due consideration, we find that substantial justice was not done the party complaining, and the judgment of the Erie County Court of Common Pleas on the gun specifications is reversed. The case is remanded for resentencing on the affirmed complicity convictions without the firearm specifications. Appellant and appellee are ordered, pursuant to App.R. 24, to pay the costs of this appeal in equal shares. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

HANDWORK and GLASSER, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.