[Cite as *State v. Taylor*, 2010-Ohio-4810.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,                                          CASE NO. 9-10-14

   PLAINTIFF-APPELLEE,

 v.

JAMES C. TAYLOR,                                          **O P I N I O N**

   DEFENDANT-APPELLANT.

**Appeal from Marion County Common Pleas Court
Trial Court No. 09-CR-242**

**Judgment Affirmed**

**Date of Decision:  October 4, 2010**

APPEARANCES:

   *Kevin P. Collins,* **for Appellant**

   *Denise Martin,* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant James C. Taylor ("Taylor") brings this appeal from the judgment of the Court of Common Pleas of Marion County finding him guilty of assaulting a police officer. For the reasons set forth below, the judgment is affirmed.

{¶2} On May 16, 2009, a distress call was made to 911 by Taylor. Taylor was confused and frantic during the call and indicated that he was performing CPR on the injured party. Officer Kenneth Persinger ("Persinger") and Officer Matt Collins ("Collins"), both employed by the Marion City Police, responded to the call along with other officers, paramedics, and the fire department. When they arrived, they found a man on the floor, severely injured and barely breathing. Taylor was performing chest compressions and mouth-to-mouth breathing. The officers directed Taylor to step back to allow the EMT's to take over the care of the victim and Taylor refused. Taylor was clearly intoxicated and agitated. When the officers attempted to move Taylor away from the victim he took a swing at Persinger. After a short struggle, the officers were able to subdue Taylor and handcuff him.

{¶3} On May 28, 2009, the Marion County Grand Jury indicted Taylor on two counts of assaulting a police officer in violation of R.C. 2903.13(A), (B), both felonies of the fourth degree. Taylor entered a plea of not guilty to both counts on

June 1, 2009. A jury trial was held on October 26 and 27, 2009. The jury returned a verdict of guilty for the assault on Persinger, and not guilty on the second count of the indictment. On January 7, 2010, a sentencing hearing was held. The trial court sentenced Taylor to three years of community control. Taylor now appeals from the conviction and raises the following assignment of error.

> **[Taylor's] conviction for assaulting a peace officer is contrary to the manifest weight of the evidence.**

{¶4} The sole assignment of error alleges that the verdict is against the manifest weight of the evidence.

> **Under a manifest-weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. * * * The appellate court, "'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'"**

*State v. Jackson*, 169 Ohio App.3d 440, 2006-Ohio-6059, ¶14, 863 N.E.2d 223. Although the appellate court may act as a thirteenth juror, it should still give due deference to the findings made by the fact-finder.

> **The fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a**

> **Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

*State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456.

{¶5} Taylor was convicted of one count of assault on a police officer, a violation of R.C. 2903.13(A). In order to prove this charge, the State had to prove that Taylor 1) knowingly, 2) caused or attempted to cause, 3) physical harm to Persinger, a peace officer. R.C. 2903.13(A)(D). Persinger testified that he was a peace officer and as follows:

> **[Persinger]: I said "look, the squad guys are here, let them take care of his, step back." He said "no, I'm gonna help my buddy." I said "no, the squadmen are here, get back." He said no again.**
>
> **\* \* \***
>
> **Q. How many times do you think you repeated this to get out of the way?**
>
> **A. I asked him to get out of the way at least three times.**
>
> **Q. Okay. And the number of times that you asked, or the time it took for you to tell him, not ask him, but to tell him to get out of the way, did he have time to respond?**
>
> **A. Yes.**
>
> **Q. Okay. What happens after that?**
>
> **A. After he refuses to move – remove himself from this person, I put my left hand, and I moved my flashlight to my right hand so I could use my left hand, and I put it underneath of his shoulder, it would be here, and asked him to move again, and he said no. So I scooted him backwards and he stood**

**up, and when he did stand up he lunged forward towards me and swung his fist at me with his right hand.**

**Q. Was it a closed fist?**

**A. Yes, it was.**

**Q. You've heard different testimony that, you know, some people didn't see punches, et cetera? Are you sure this – the Defendant swung on you?**

**A. Yes.**

**\* \* \***

**Q. And what did you do?**

**A. In reaction to that I put my left hand up, and then I struck the subject in the face with my right hand.**

**Q. Why'd you put your – what hand, left hand up?**

**A. Yes.**

**Q. Why'd you put your left hand up?**

**A. Because the punch came from the left side.**

**Q. Okay. So was there – do you believe that the Defendant was attempting to make contact with you?**

**A. Yes, I did.**

**\* \* \***

**A. Yes, he was trying to hit me.**

**Q. Okay. Any doubt?**

**A. No.**

**Q. Alright. Had he been able to square off with you where would you have been hit?**

* * *

**A. The punch was coming towards my head.**

* * *

**Q. Have you ever had to hit anyone in the face?**

**A. No.**

**Q. Alright. What made you do it on this night?**

**A. It was reactive in the fact he had directly thrown a punch at me.**

Tr. 286-91. This testimony was supported by that of Collins, who testified as follows.

**Q. When EMTs arrive, what do you do?**

**A. Well, like I said, they're even telling him to get back so they can get in and treat the subject. About that same time Patrolman Persinger puts his hands on Mr. Taylor on his left shoulder and is like "you need to get back." And that's when –**

**Q. How would you describe Patrolman Persinger's mannerisms?**

**A. At that point he's being very stern with him, "you need to get back," because we pretty much exhausted all verbal commands at that point.**

**Q. Okay. What happened?**

**A. As he put his hands on him and told him he needs to get back so the EMTs could get in there, Mr. Taylor then gets up quickly and lunges at Patrolman Persinger swinging his right**

> **fist at patrolman Persinger. I couldn't see if Patrolman Persinger was struck, I could not see that. It didn't appear that he was, but from my angle I couldn't see. However, I did see Patrolman Persinger's reaction was to, you know, lunge – or kind of jerk back and give him a quick strike with his right hand. And I believe that Patrolman Persinger did land that punch.**

Tr. 186-87. Taylor did not present any evidence that these events did not occur. Given this testimony, this court does not find that the jury clearly lost its way and created a manifest miscarriage of justice. Thus, the assignment of error is overruled.

{¶6} Having found no error prejudicial to the defendant, the judgment of the Court of Common Pleas of Marion County is affirmed.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jnc**