[Cite as *State v. Watkins*, 2018-Ohio-4722.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY


STATE OF OHIO,

      PLAINTIFF-APPELLEE,                     CASE NO.  12-18-08

      v.

ANDREW J. WATKINS, IV,               O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Putnam County Common Pleas Court
Trial Court No. 2017 CR 00054

Judgment Affirmed

Date of Decision:    November 26, 2018


APPEARANCES:

    *Kathryn Polonsky and Michelle Umana* **for Appellant**

    *Katherine G. Porter* **for Appellee**

Case No. 12-18-08

**ZIMMERMAN, J.**

{¶1} Defendant-Appellant, Andrew J. Watkins, IV ("Appellant") appeals the judgment of the Putnam County Common Pleas Court, convicting him of one count of trafficking in drugs and one count of permitting drug abuse. On appeal, Appellant argues that: 1) he was denied the effective assistance of counsel; 2) or, in the alternative, that his trial counsel's performance was objectively unreasonable and prejudicial; 3) insufficient evidence was presented by the State to convict him; and 4) his conviction was against the manifest weight of the evidence. For the reasons that follow, we affirm the judgment of the trial court.

*Factual Background*

{¶2} On January 18, 2017, Officer James Augustine ("Augustine"), of the Multi-Area Narcotics Task Force ("MAN unit"), met with confidential informant Richard Babcock (the "CI") to set up a controlled buy of crystal methamphetamine ("meth"). (Trial, 03/20/2018 Tr. at 80-81). The CI had advised Augustine that he could buy meth from two individuals known as "AJ" and "Jeffro." (*Id.* at 81). During the course of his investigation, Augustine learned that "AJ" was the Appellant and "Jeffro" was Jeff Staver ("Staver").[1] (*Id.*).

---

[1] Augustine testified that he worked with the Lima Task Force to identify AJ as Appellant. (Trial, 03/20/2018 Tr. at 81). In addition to working with the Lima Task Force, Augustine obtained a BMV photo of Appellant and Facebook information that also identified "AJ" as Appellant. (*Id.* at 89).

{¶3} On the aforementioned date, the CI made a phone call to Appellant, in Augustine's presence, that Augustine recorded with the CI's permission. (*Id.* at 84). During the phone call, there was a purported drug offer by the Appellant to the CI of "24 for 12," which Augustine interpreted to be an offer to sell the CI 24 grams of meth for $1,200. (*Id.* at 87). During the call, the CI and Appellant agreed to meet at the McDonald's in Ottawa, Ohio to complete the arranged drug buy. (*Id.* at 88).

{¶4} After the call was completed, Augustine returned to his office to await the time that the buy would occur. (*Id.* at 89). At approximately 1:40 p.m. that afternoon, the CI contacted Augustine to inform him that the drug buy would occur that afternoon. (*Id.* at 90). The CI also advised Augustine that the terms of the deal had changed to 12 grams (of meth) for $600. (*Id.*). With that information, Augustine searched the CI and his vehicle, outfitted him (the CI) with audio and video equipment, and gave him cash to purchase the drugs. (*Id.* at 90-91).

{¶5} When the CI arrived at McDonald's, the Appellant phoned him and attempted to change the location of the drug buy from Ottawa to Lima. (*Id.* at 92). However, Appellant ultimately only changed the buy location from McDonalds to the Shell Ottawa Party Mart ("Party Mart"), located across the street from McDonald's. (*Id.* at 93-94).

{¶6} MAN unit agents surveilling the locations observed Staver exit a blue Chevy Cobalt in the Party Mart parking lot. (*Id.* at 95). The vehicle was then parked

in the McDonald's parking lot across the street. (*Id.*). Robert Garcia, ("Garcia") an investigator with the MAN unit who conducted the drug buy surveillance, identified Appellant as the driver of the blue Chevy Cobalt.[2] (*Id.* at 126-27) Garcia further testified that Appellant exited the vehicle and entered McDonald's. (*Id.*). Staver sold the CI drugs while the Appellant was inside McDonald's. (*Id.* at 96). Notably, Garcia testified that Appellant was not involved in the "hand-to-hand" transaction that occurred at Party Mart, only Staver. (*Id.* at 101). After completing the drug buy, Staver returned to the blue Chevy Cobalt. (*Id.* at 110).

**{¶7}** After completing the transaction, the CI met Augustine at a predetermined location. (*Id.* at 97). Augustine field tested the drugs, resulting in a presumptive positive for meth, which weighed 12.2 grams. (*Id.*). Augustine then transported the drugs to the MAN unit office and tagged it as evidence. (*Id.* at 98). Thereafter, Deputy Todd Pingle with the Putnam County Sheriff's MAN unit, transported the drugs to the Bureau of Criminal Investigation ("BCI") crime lab, where it tested positive for meth. (*Id.* at 120-21; 160).

*Procedural Background*

**{¶8}** On September 27, 2017, Appellant was indicted on two separate counts by the Putnam County Grand Jury, for: Count One, Trafficking in Drugs, in violation of R.C. 2925.03(A)(1)&(C)(1)(c), a felony of the third degree; and Count

---

[2] Garcia testified that he personally identified Appellant as the driver of the blue Chevy Cobalt. (*See,* Trial, 03/20/2018 Tr. at 128).

Two, Permitting Drug Abuse, in violation of R.C. 2925.13(A), a felony of the fifth degree. (Doc. No. 1). Appellant was arraigned on October 10, 2017, assigned court-appointed counsel, and entered "not guilty" pleas to both counts in the indictment. (Doc. No. 10; Arraignment, 10/10/2017 Tr. at 6-7).

{¶9} On November 21, 2017, Appellant (through counsel) filed a notice of substitution of counsel, indicating that he had retained his own counsel. (Doc. No. 21). On the same date, Appellant's new attorney filed a motion to continue the previously scheduled pre-trial, due to a scheduling conflict. (*Id.*). The trial court granted the continuance and the pre-trial was rescheduled for January 10, 2018. (Doc. No. 27).

{¶10} At the final pre-trial, the State advised the trial court that a plea agreement had not been reached, and that the matter would proceed to trial. (Final Pre-Trial, 02/26/2018 Tr. at 5).

{¶11} Appellant's jury trial commenced on March 20, 2018. (Doc. Nos. 44, 45, 47; Trial, 03/20/2018 Tr. at 4). At the conclusion of trial, the jury returned verdicts of guilty to both counts as indicted. (Doc. No. 47). The trial court ordered a pre-sentence investigation and Appellant's sentencing hearing was scheduled for May 4, 2018. (*Id.*).

{¶12} On March 21, 2018, Teva Madison (apparently acting on behalf of Appellant), filed a letter in the trial court indicating that Appellant wished to fire his

trial counsel, and requested a bond hearing. (Doc. No. 50). In response to Appellant's motion, Appellant's trial counsel also filed a motion for a bond hearing, which the trial court denied. (Doc. Nos. 52, 53). On May 4, 2018, the trial court sentenced Appellant to thirty (30) months in prison for Count One, and twelve (12) months in prison for Count Two. (Doc. No. 59). The trial court ordered that the prison terms be served concurrently to each other, for a total term of incarceration of thirty (30) months. (*Id.*).

{¶13} After sentencing, Appellant's trial counsel filed a "motion to withdraw as attorney of record" and a "motion to appoint attorney for purpose of defendant appeal." (Doc. Nos. 65, 66). The trial court granted trial counsel's "motion to withdraw as attorney of record," and appointed the Ohio Public Defender to represent Appellant in his appeal. (Doc. Nos. 67, 69).

{¶14} Appellant timely appeals, and presents the following assignments of error for our review:

**ASSIGNMENT OF ERROR NO. I**

**MR. WATKIN'S [SIC] TRIAL COUNSEL PERFORMED SO DEFICIENTLY AS TO DENY HIM EFFECTIVE ASSISTANCE OF COUNSEL AND AS TO EFFECTIVELY CONCEDE HIS GUILT TO THE JURY.**

**ASSIGNMENT OF ERROR NO. II**

**ALTERNATIVELY, COUNSEL'S PERFORMANCE WAS OBJECTIVELY UNREASONABLE AND IT PREJUDICED MR. WATKINS, DENYING HIM A FAIR TRIAL.**

## ASSIGNMENT OF ERROR NO. III

**MR. WATKINS' CONVICTIONS VIOLATED DUE PROCESS AS THE STATE USED LEGALLY INSUFFICIENT EVIDENCE TO CONVICT HIM.**

## ASSIGNMENT OF ERROR NO. IV

**MR. WATKINS' CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE JURY CLEARLY LOST ITS WAY IN RENDERING A GUILTY VERDICT.**

### *Appellant's First Assignment of Error*

**{¶15}** In his first assignment of error, Appellant argues that his trial counsel's performance was so deficient that it amounted to a "structural defect" at trial. We disagree.

### *Standard of Review*

**{¶16}** "'The right to counsel is the right to effective assistance of counsel.'" *State v. Blair,* 171 Ohio App.3d 702, 2007-Ohio-2417, 872 N.E.2d 986, ¶ 13 *quoting Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052 (1984). "Generally, a properly licensed attorney practicing in this state is presumed to be competent." *Id.* "However, in rare situations when counsel has done nothing more in the preparation of the case than be a warm body, prejudice is presumed." *Id.*

*Analysis*

**{¶17}** "In *United States v. Cronic,* 'the United States Supreme Court * * * determined that prejudice should be *presumed* in circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" (Emphasis sic). *State v. Loman,* 3rd Dist. Auglaize No. 2-13-17, 2014-Ohio-1570, ¶ 24 *quoting State v. Drake,* 8th Dist. Cuyahoga No. 93761, 2010-Ohio-1065, ¶ 8 *quoting United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, (1984). Prejudice is presumed in cases where the accused was denied counsel at "a critical stage of his trial," where counsel fails to subject the prosecution's case to "meaningful adversarial testing," and where a criminal defendant had been "denied the right of effective cross-examination." *Cronic,* 466 U.S. 648, 658-59, 104 S.Ct. 2039 (1984). Furthermore, "[c]ircumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659-60.

**{¶18}** Appellant argues that due to the magnitude of the errors that Appellant's trial counsel committed during his jury trial, "a critical stage," this case falls within the narrow exception set forth in *Cronic.* Appellant further argues that

since trial counsel's performance was so deficient he was denied any trial counsel at all.

**{¶19}** In support of his argument, Appellant directs us to portions of the transcript to demonstrate trial counsel's deficient performance. Regardless, should Appellant's grievances demonstrate a "deficient performance" by his trial counsel, we cannot say that such performance warrants the application of the narrow exception outlined in *Cronic* under the facts presented. Even though we agree with Appellant that his trial counsel's alleged deficiencies occurred at his jury trial, which is a "critical stage of his trial," we find that such deficiencies, individually or as whole, do not amount to a *Cronic* violation for the reasons set forth below.

**{¶20}** In *State v. Blair,* the Second District Court of Appeals found that trial counsel's failure to prepare for trial and by sitting silently during trial warranted the presumption that defendant was prejudiced, in accordance with *Cronic. See, State v. Blair,* 171 Ohio App.3d 702, 2007-Ohio-2417, 872 N.E.2d 986, ¶¶ 13-16 (trial counsel failed to file any motions prior to trial, indicated on the record that he was not prepared to go to trial, and sat silently as the criminal defendant was convicted without any defense whatsoever). However, in the case *sub judice,* the record reveals that trial counsel was actively involved in Appellant's trial advocacy. Thus, we find the alleged deficiencies (of Appellant's trial counsel) here to be dissimilar to those deficiencies set forth in *Blair.*

{¶21} Further, this case is not analogous to the deficiencies we considered in *State v. Loman,* wherein trial counsel was required to present testimony from counsel's office in opposition to Loman's interest, which resulted in Loman receiving a prison sentence instead of community control. *See, State v. Loman,* 3rd Dist. Auglaize No. 2-13-27, 2014-Ohio-1570, ¶¶ 33-35. *See also, State v. Oliver,* 9th Dist. Summit No. 26446, 2013-Ohio-1977, ¶ 19 (criminal defendant was left without counsel and denied the right of cross-examination when his attorney presented testimony against his interest). In this case, we find no evidence that Appellant's trial counsel was compelled by the trial court to present evidence against his interests. Thus, the alleged deficiencies (of Appellant's trial counsel) are dissimilar to the deficiencies we addressed in *Loman*.

{¶22} Moreover, the record reveals that Appellant was represented by counsel who: exercised preemptory challenges of potential jury members during *voir dire*; gave an opening statement; cross-examined witnesses; made a Crim.R. 29 motion at the conclusion of the State's case; and made a closing argument. Even though the Appellant is not satisfied with his trial counsel's performance, we find the alleged deficient performance by trial counsel here does not fall within the *narrow exception* envisioned by *Cronic*. Consequently, trial counsel's performance does not amount to a "structural defect" and we overrule Appellant's first assignment of error.

*Appellant's Second Assignment of Error*

{¶23} In his second assignment of error, Appellant argues that if trial counsel's performance does not warrant the application of the *Cronic* exception, trial counsel's performance nonetheless fell below the standard for effective assistance of counsel as announced in *Strickland v. Washington*. For the reasons that follow, we find this argument to be without merit.

*Standard of Review*

{¶24} "'When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that the counsel's representation fell below an objective standard of reasonableness.'" *State v. Sanders*, 94 Ohio St.3d 150, 151, 2002-Ohio-350, 761 N.E.2d 18 *quoting Strickland*, 466 U.S. 668, 687-88, 104 S. Ct. 2052 (1984). Additionally, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Id.*, at 694. *See also, State v. Bradley*, 42 Ohio St.3d 136, 137, 538 N.E.2d 373 (1989).

{¶25} In analyzing a claim for ineffective assistance of counsel, this court's scrutiny of counsel's performance must be highly deferential, with a "'strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance.'" *Bradley*, supra, at 142, *quoting Strickland*, supra, at 687-88. "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *Id*. "'To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.'" *State v. Beaver,* 3rd Dist. Marion No. 9-17-37, 2018-Ohio-2438, ¶ 28, *quoting State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 165.

*Analysis*

{¶26} The Ohio Supreme Court, in *State v. Bradley,* adopted the United State's Supreme Court test in *Strickland,* requiring that a criminal defendant declaring counsel to be ineffective prove that: 1) counsel's performance is below an objective standard of reasonable representation, and 2) that prejudice arises from such performance. *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus.

{¶27} Appellant points us to numerous instances (at trial) wherein his trial counsel's performance "fell below an objective standard of reasonable representation." Specifically, Appellant argues that trial counsel: 1) failed to remove or rehabilitate two prospective jurors who indicated that they would

presume guilt if a defendant failed to testify; 2) failed to remove prospective jurors who indicated that they knew one of the State's witnesses; 3) failed to ask any questions during *voir dire*; 3) stipulated to a written transcript identifying the Appellant as the person who spoke with the CI during a taped phone call; 4) told the jury in an opening statement that the defense would "put on evidence" to prove Appellant's innocence, but failed to present *any* evidence; 5) failed to object to hearsay or impermissible testimony; 6) failed to cross-examine various State's witnesses, including the CI; and 7) made a conclusory and unsupported Crim.R. 29 request.

**{¶28}** Initially, we note that in *Bradley* the Supreme Court analyzed *Strickland* to hold that it is not always necessary to engage in an analysis of counsel's ineffectiveness *and* the prejudicial impact of any of counsel's errors. Rather, the Supreme Court focused upon the *Strickland* admonishment (to reviewing courts) that "if it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice, which we expect will often be so, *that course should be followed*." (Emphasis added). *Id.* at 143, quoting *Strickland*, 466 U.S. 668, 697, 104 S. Ct. 2052 (1984).

**{¶29}** In following the Ohio Supreme Court's interpretation of *Strickland*, we find that *even if* all of Appellant's grievances amounted to a failure on the part of trial counsel to meet an objective standard of reasonable representation,

Appellant has failed to demonstrate that these errors, *individually or in toto*, resulted in prejudice. Specifically, the record reveals that CI knew the Appellant prior to the drug transaction, and further knew that Appellant's nickname was "AJ". (Trial, 03/20/2018 Tr. at 139). Additionally, multiple trial witnesses testified that they observed Appellant at the time of the prearranged buy; saw him drive the blue Chevy and drop Staver off at the Party Mart parking lot; and then park the car across the street and enter McDonalds. (*See, id.* at 149-50; 129). Therefore, the evidence of Appellant's involvement in the drug transaction was significant and not "weakly supported by the record," and the resulting prejudice to Appellant has not been established.

{¶30} Nevertheless, Appellant argues that the outcome of the trial would have been different had trial counsel done more. Specifically, Appellant asserts that the jury's questions (to the trial court) during deliberations indicated that had trial counsel performed her duties differently, the jury would not have wrestled with the questions that they submitted to the trial court during deliberations. We disagree and we find this argument to be mere speculation. Rather, the jurors' questions could have indicated that trial counsel's strategy, to *not present evidence*, may have cast doubt on the State's case and resulted in the jury's questions. Furthermore, we fail to find that trial counsel's decision not to cross examine the CI resulted in prejudice to Appellant, because such cross-examination would have given the CI

the opportunity to reaffirm and bolster his testimony that Appellant was, in fact, the individual on the other end of the phone call offering to sell him drugs.

{¶31} Even though Appellant presumes a favorable outcome had counsel performed her duties differently, this *presumption* does not exist and resulting prejudice must be proven. And, indulging the *strong* presumption that counsel's performance fell within the wide range of reasonable professional assistance, we cannot say that any of the argued deficiencies resulted in sufficient prejudice to the Appellant. Accordingly, we overrule Appellant's second assignment of error.

### *Appellant's Third Assignment of Error*

{¶32} In his third assignment of error, Appellant argues that the trial court used insufficient evidence to prove that Appellant was the individual on the other end of the phone call (with the CI), and absent such proof (that Appellant was that individual), the evidence was legally insufficient to convict Appellant of both counts. For the reasons that follow, we disagree.

### *Standard of Review*

{¶33} "Whether there is legally sufficient evidence to sustain a verdict is a question of law." *State v. Lyle,* 3rd Dist. Allen No. 1-14-41, 2015-Ohio-1181, ¶ 8 *citing State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. Sufficiency is a test of adequacy. *Id.* Under a challenge alleging insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id. quoting State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77.

*Analysis[3]*

**{¶34}** Appellant was found guilty in Count One of Trafficking in Drugs, in violation of R.C. 2925.03(A)(1). Specifically, R.C. 2925.03(A)(1) provides that "[n]o person shall knowingly do any of the following: sell or offer to sell a controlled substance or a controlled substance analog." R.C. 2925.03(A)(1). Augustine testified at trial that Appellant, in a phone call with the CI, offered the CI "24 for 12" which meant 24 grams (of meth) for $1,200. (Trial, 03/20/2018 Tr. at 85; 87). The CI affirmed Augustine's testimony, testifying that Appellant offered to sell him (the CI) 24 grams (of "ice" or "meth") for $1,200.[4] (*Id.* at 138). Although Appellant did not physically complete the "hand to hand" sale of the drug, the testimony demonstrates that Appellant offered to sell (the CI) meth, a controlled substance, over the phone and assisted Staver in completing the drug transaction. Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of Trafficking in Drugs, as defined in R.C. 2925.03(A)(1), proven beyond a reasonable doubt.

---

[3] We note that Appellant primarily attacks the evidence related to the phone call, however, for the reasons discussed herein, we find sufficient evidence to satisfy each element of Appellant's charges.
[4] Ultimately, Staver sold the CI 12 grams (of meth) for $600. (Trial, 3/20/2018 Tr. At 90).

{¶35} Next, we direct our attention to Count Two, Permitting Drug Abuse, in violation of R.C. 2925.13(A). R.C. 2925.13(A) states: "no person who is the owner, operator, or person in charge of a locomotive, * * * or other vehicle, * * * shall knowingly permit the vehicle to be used for the commission of a felony drug abuse offense." R.C. 2925.13(A). Testimony from the State's witnesses revealed that Appellant was observed operating the blue Chevy Cobalt that dropped Staver off at the Party Mart parking lot. (*Id.* at 128-29). Furthermore, the CI's "body cam" footage revealed that Staver, in turn, sold a "baggie" of drugs to the CI. (*Id.* at 147-52; Ex. No. 6). Upon completion of the drug sale, Staver was picked up by Appellant in the blue Chevy Cobalt. (*Id.* at 110). The record reveals that the State established that the Appellant was the operator of a motor vehicle, and that Appellant permitted that vehicle to be used to traffic in meth, a felony drug abuse offense. Viewing this evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of Permitting Drug Abuse, as defined in R.C. 2925.13(A), proven beyond a reasonable doubt. Accordingly, we overrule Appellant's third assignment of error in whole.

### *Appellant's Fourth Assignment of Error*

{¶36} In his fourth assignment of error, Appellant argues that his convictions were against the manifest weight of the evidence. Specifically, Appellant again argues that the State failed to prove that he was the individual on the other end of

the phone call. For reasons discussed below and throughout this opinion, we disagree.

*Standard of Review*

**{¶37}** The Ohio Supreme Court has "'carefully distinguished the terms 'sufficiency' and 'weight' in criminal cases, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.'" *Lyle,* 3rd Dist. Allen No. 1-14-41, 2015-Ohio-1181, ¶ 9 *quoting Eastley v. Volkman,* 132 Ohio St.3d 328, 2010-Ohio-2179, 972 N.E.2d 517, ¶ 10.

**{¶38}** In analyzing a claim that a conviction was against the manifest weight of the evidence, an appellate court:

> sits as the "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. * * * The appellate court, "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction."

*State v. Johnson*, 3rd Dist. Shelby No. 17-08-06, 2008-Ohio-4784, ¶ 4 *quoting State v. Jackson*, 169 Ohio App.3d 440, 2006-Ohio-6059, 863 N.E.2d 223, ¶14 (citations omitted). However, in sitting as the thirteenth juror the appellate court should give due deference to the findings made by the jury. *Id.*

*Analysis*

**{¶39}** The Eighth District Court of Appeals identified the following eight factors as a guide to assist a reviewing court in determining whether a decision of the trial court was against the manifest weight of the evidence:

1. A reviewing court is not required to accept the incredible as true;

2. Whether the evidence is uncontradicted;

3. Whether a witness was impeached;

4. What was not proved;

5. Certainty of evidence;

6. Reliability of evidence;

7. Whether witness' testimony is self-serving;

8. And whether evidence is vague, uncertain, conflicting, or fragmentary.

*State v. Mattison,* 23 Ohio App.3d 10, 14, 490 N.E.2d 926 (8th Dist.1995). We discuss the relevant factors to the underlying case.

*Reviewing Court is not Required to Accept the Incredible as True*

**{¶40}** The record supports, and it is not incredible to believe that Appellant offered to sell the CI meth, arranged the sale, and had a third party complete the actual hand-to-hand transaction.

*Uncontradicted Evidence*

**{¶41}** The State's uncontradicted evidence demonstrated that Appellant made an offer to sell the CI meth; that the Appellant transported a third individual, Staver, to a location to meet the CI; that Staver completed a hand-to-hand drug transaction with the CI; and that Appellant picked up Staver immediately after the drug deal. Moreover, Appellant did not present any evidence to contradict this version of events.

*Impeached Witness*

**{¶42}** A review of the trial transcript reveals that none of the State's witnesses were impeached.

*What was not Proved*

**{¶43}** Appellant's primary argument is that the State failed to prove that he was the individual on the other end of the phone call. However, the record reveals otherwise. Specifically, the CI testified that he knew Appellant; that Appellant was the person that he called; and that Appellant offered him 24 for 12, which, in drug vernacular, reasonably meant 24 grams of meth for $1,200. (*See generally,* Trial, 03/20/2018 Tr. at 138). Accordingly, and for reasons discussed herein, we find all of the essential elements of the two counts charged were proven by the State.

*Self-Serving Testimony*

**{¶44}** We acknowledge that the CI's testimony, to some degree, was self-serving. Testimony at trial revealed that the CI typically earned money, or attempted to work off criminal charges, in exchange for participating in controlled buys. (*See,* Trial, 03/20/2018 Tr. at 82-83). However, even with that potential (for self-serving testimony from the CI), there is no indication that the testimony of any of the other State's witnesses was self-serving.

*Vague, Uncertain, Conflicting, or Fragmentary Testimony*

**{¶45}** A review of the trial transcript demonstrates that none of the testimony elicited at trial was vague, uncertain, conflicting, or fragmentary. Furthermore, Appellant does not argue that the testimony at trial falls into any of the aforementioned categories.

**{¶46}** In "dutifully examin[ing] the entire record, weigh[ing] the evidence, and considering[ing] the credibility of witnesses," we find that the jury did not lose its way in convicting Appellant on both of the criminal charges contained within his indictment. *See, State v. Griffin,* 4th Dist. Scioto No. 12CA3484, 2013-Ohio-3309, ¶ 17. Accordingly, we overrule Appellant's fourth assignment of error.

*Conclusion*

**{¶47}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we overrule Appellant's first, second, third, and fourth assignments of error and affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**